The INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF NEW ORLEANS, INC., Plaintiff–Appellant,

v.

CITY OF BATON ROUGE and Parish of East Baton Rouge, Defendants–Appellees.

No. 88–3381.

United States Court of Appeals, Fifth Circuit.

July 5, 1989.

J. Arthur Smith, III, Baton Rouge, La., for plaintiff-appellant.

W. Michael Stemmans, William R. Aaron, Asst. Parish Attys., Baton Rouge, La., for defendants-appellees.

Before ALDISERT *, REAVLEY and HIGGINBOTHAM, Circuit Judges.

* Circuit Judge of the Third Circuit, sitting by designation.

ALDISERT, Circuit Judge.

We are to decide whether an ordinance enacted by the City of Baton Rouge and the Parish of East Baton Rouge (city-parish) trenches upon first amendment rights and is, therefore, unconstitutional. The ordinance prohibits soliciting employment, business or charitable contributions from the occupants of any vehicle on any street or roadway.

The International Society for Krishna Consciousness of New Orleans, Inc., (ISKCON) appeals from the district court's denial of relief. 668 F.Supp. 527. ISKCON had sought a declaratory judgment and injunction against the city-parish to have the ordinance declared unconstitutional and to restrain the city from enforcing it. ISKCON contends that the ordinance is overly broad and that the city-parish failed in its duty to employ the least restrictive means of serving the municipality's interest in traffic flow and roadway safety. The appellees meet the argument head on. They argue the ordinance is narrowly tailored, that it is not substantially overbroad, and that it qualifies as the least restrictive means of achieving its goal of regulating traffic and protecting motorist and pedestrian safety. The district court held that the ordinance did not offend the constitution. We agree and will affirm.

Jurisdiction was proper in the district court under 28 U.S.C. § 1331. The appeal was timely filed under Rule 4(a) Fed.R. App.P. The appeal is from a final judgment and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## I.

The appellant society is part of the International Krishna Consciousness movement. The Society is a religious organization entitled to the protection of the first amendment. *Int'l Soc'y for Krishna Consciousness v. City of Houston,* 689 F.2d 541 (5th Cir.1982). Its adherents believe that in order to glorify God, and to enlighten the public generally, they must practice the ritual of Sankirtan, which requires them to publicly distribute religious literature and to solicit financial contributions to further their cause.

Victor Mistretta, the Society's president, testified that he had decided the Sankirtan ritual would be performed in Baton Rouge during the 1986 Christmas season. Several members of the Society were then dispatched from New Orleans to Baton Rouge to solicit donations at its busiest intersections. All were dressed in Santa Clause costumes. Mr. Mistretta testified that those who participated were carefully instructed regarding safety and told to stay on the sidewalk or neutral ground if at all possible. Krishna members who were soliciting donations at intersections were warned by Baton Rouge police officers that their activities violated a local ordinance, and that they would be arrested if they persisted. Although no arrests were actually made, the Society instituted this action in the United States district court for the Middle District of Louisiana.

The ordinance, section 96(b) of Title 11 of the Code of Ordinances of the City of Baton Rouge and Parish of East Baton Rouge, was enacted by the Baton Rouge city council in 1983. The preamble to the ordinance reads:

WHEREAS, a problem has been identified with persons attempting to solicit rides, employment, business, or charitable contributions from the occupants of moving vehicles on certain city streets; and

WHEREAS, this practice has been identified as being unsafe for both the person engaging in the solicitation and for traffic in general; and

WHEREAS, the activity of soliciting rides, business, employment, or charitable contributions from the occupants of vehicles constitutes an impediment to the normal and safe flow of traffic in the City of Baton Rouge; and

WHEREAS, this activity has in the past resulted in accidents one of which resulted in the death of the person engaged in the soliciting activity.

Section 96(b) provides:

No person shall be upon or go upon any street or roadway or shall be upon or go

upon any shoulder of any street or roadway nor shall any such person be upon or go upon any neutral ground of any street or roadway for the purpose of soliciting employment, business, or charitable contributions of any kind from the occupant of any vehicle.

The reasons for and the purpose of the ordinance were explained by the witnesses at the hearing. Richard Redd, legal advisor to the city's police department testified that the city-parish enacted the ordinance after a traffic death in which a news vendor was fatally injured while soliciting sales in a Baton Rouge street. Redd personally drafted the ordinance and said he could not envision drafting another ordinance that would achieve the desired intent, taking into account safety and traffic flow considerations.

James Webb, an expert in traffic engineering, established that the purpose of streets, highways, and roads was to move people and goods both safely and efficiently. He testified that streets, highways, and roads are not designed for the purpose of soliciting funds. He also testified that he could not envision another drafting scheme that would achieve the desired result and eliminate hazardous consequences and traffic problems.

The city-parish introduced into evidence a local newspaper dated December 13, 1986, displaying a front page photograph of a female wearing a Santa Claus costume standing beside a vehicle in a line of vehicles. The court found that both feet were planted firmly in the roadway, not on the neutral ground. The individual was identified by Mr. Mistretta as one of the Krishna members who did indeed solicit donations in Baton Rouge at that time.

The district court found as a fact that in Baton Rouge members of the sect solicit donations from occupants of motor vehicles that are temporarily stopped at traffic lights. Such donations are solicited only at high traffic times, and at the busiest intersections. R.E. 60–61.

## II.

■ Whether ISKCON's first amendment free speech rights have been infringed is a mixed question of law and fact. *Dunagin v. City of Oxford,* 718 F.2d 738, 748 n. 8 (5th Cir.1983), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). The appropriate standard of review is de novo because the application of constitutional law to the facts of this case "requires subtle legal distinctions, a sense of history, and an ordering of conflicting rights, values and interests." *See id.* Appellate courts have "considerable leeway" in this context. *Id.* at 849 n. 8.

## III.

The Society argues that public streets, sidewalks, and neutral grounds constitute public fora which may be freely used for purposes of assembly, communication, and discussion of public questions. The Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985); *see also Perry Education Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

In *Perry,* the court identified three types of fora: the traditional public forum, the public forum created by designation, and the non-public forum. Traditional public fora generally are those places which "by long tradition or by government fiat have been devoted to assembly and debate." *Perry,* 460 U.S. at 45, 103 S.Ct. at 954. Public sidewalks, streets, and parks have been recognized as traditional public fora which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed.2d 1423 (1939); *see also Frisby v. Schultz,* — U.S. —, —, 108 S.Ct. 2495, 2499–501, 101 L.Ed.2d

420 (June 27, 1988); *Perry*, 460 U.S. at 45, 103 S.Ct. at 954.

 The government's ability to permissibly restrict expressive activity in a public forum is very limited. *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983). "The appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content." *Frisby,* —— U.S. at ——, 108 S.Ct. at 2500. Content-based regulation must be necessary to serve a compelling state interest and be narrowly drawn to achieve that end; content-neutral regulations of time, place, and manner of expression are enforceable if they are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Perry*, 460 U.S. at 45, 103 S.Ct. at 955 (*cited in Frisby,* —— U.S. at ——, 108 S.Ct. at 2500).

 When public property is not characterized as a public forum, the government "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Perry*, 460 U.S. at 46, 103 S.Ct. at 955. Indeed, a complete ban on free expression may be imposed in a non-public forum if the prohibition is reasonable and content-neutral. *See United States Postal Service v. Council of Greenburgh Civic Assoc's*, 453 U.S. 114, 132, 101 S.Ct. 2676, 2686, 69 L.Ed.2d 517 (1981).

Like the district court we will assume, without deciding, that the roadways and streets of Baton Rouge constitute a public forum. Thus, we decline the city-parish's invitation to rule that the streets are not public fora under the no-soliciting ordinance. Instead, we will examine the ordinance under the higher standard applicable to restrictions on expressive activity within a public forum.

## IV.

 Where a public forum is involved, and the restriction is content-neutral, the regulation must be "narrowly tailored to serve a significant government interest," and "must leave open ample alternative channels of communication." *Perry*, 460 U.S. at 45, 103 S.Ct. at 955. We are satisfied that the ordinance at issue is "content-neutral."

The Baton Rouge ordinance applies evenhandedly to every organization or individual, regardless of viewpoint, which attempts to solicit "employment, business or charitable contributions of any kind from the occupant of any vehicle" traveling on Baton Rouge streets. *See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 648–49, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1981) (discussing content-neutral restriction). On its face, the ordinance is content-neutral. We now must inquire whether the ordinance meets the traffic flow and safety concerns expressed in the preamble, and whether those concerns represent a significant government interest.

### A.

The Supreme Court has recognized the substantial risk of disruption in crowd or traffic control that may be presented by solicitation of contributions, as compared to other forms of expression. In *Heffron*, the Court upheld a state fair rule restricting solicitation of contributions and distribution of literature to stationary booths, although permitting individuals to wander through the fairgrounds to express ideas to the crowds. The Court found significant the fact that members of organizations were free to "orally propagate their views" throughout the fairgrounds, and that only solicitation, sales, and distribution were restricted to booths. *Id.* at 655, 101 S.Ct. at 2567. The Court thereby recognized a distinction between the purely communicative aspect of oral advocacy on the one hand, and the solicitation of contributions, which can prove more disruptive of order and crowd flow, on the other hand. This is because solicitation and selling require "stopping [individuals] momentarily or for longer periods as money is given or exchanged for literature." *Id.* at 653, 101

S.Ct. at 2567. The Ninth Circuit, following *Heffron*, upheld a Phoenix ordinance substantially similar to the ordinance at issue in this case, in *Acorn v. City of Phoenix*, 798 F.2d 1260 (9th Cir.1986).

Similarly, we think that restrictions on solicitation are particularly appropriate in the context of assuring the free movement of vehicles and promoting traffic safety on city streets. The Baton Rouge ordinance is narrowly aimed at the disruptive nature of fund solicitation from the occupants of vehicles. Direct communication of ideas, including the distribution of literature to occupants in vehicles, is not restricted.

The preamble of the ordinance noted that the soliciting practice "has been identified as unsafe for both the person engaged in the solicitation and for traffic in general" and that "this activity has in the past resulted in accidents one of which resulted from the death of the person engaged in the soliciting activity." Testimony at trial supported this basis for passage of the statute. In *United States Labor Party v. Oremus*, 619 F.2d 683 (7th Cir.1980), the court also had before it a provision prohibiting solicitation from the occupants of vehicles. The court noted the "evident dangers of physical injury and traffic disruption that are present when individuals stand in the center of busy streets trying to engage drivers and solicit contributions from them." *Id.* at 688.

We are satisfied with the analysis of this problem set forth in *Acorn v. City of Phoenix*:

Unlike oral advocacy of ideas, or even the distribution of literature, successful solicitation requires the individual to respond by searching for currency and passing it along to the solicitor. Even after the solicitor has departed, the driver must secure any change returned, replace a wallet or close a purse, and then return proper attention to the full responsibilities of a motor vehicle driver. The direct personal solicitation from drivers distracts them from their primary duty to watch the traffic and potential hazards in the road, observe all traffic

control signals or warnings, and prepare to move through the intersection.

*Acorn*, 798 F.2d at 1269.

We determine that the government has demonstrated a significant safety interest justifying this regulation. We now turn to the question of whether the ordinance is narrowly tailored to serve that interest.

### B.

Appellant argues that this ordinance is not narrowly tailored because it "sweeps within its ambit *all* streets and roadways within the Parish of East Baton Rouge." Br. for appellant at 16–17. Appellant contends that a more narrowly tailored ordinance would consider the speed of traffic, the width of the neutral ground, the presence or absence of stop signs and traffic lights, etc. *Id.* at 20.

We agree with the district court that "[t]his ordinance is narrowly drawn and aimed at the peculiarly disruptive nature of fund solicitation from occupants of vehicles causing delays and interference with vehicular traffic." Dist. ct. opin. at 9. The city traffic engineer testified that while solicitations are most hazardous during peak hours on major routes, solicitations on other routes carry other hazards, e.g., no sidewalks, narrow shoulders, open drainage ditches, etc. *Id.* at 3. The evidence supports the district court's conclusion that "there is no way that such activities can be made 'safe'." *Id.* at 9.

### C.

The limited nature of this ordinance also leaves open ample alternative channels of communication. The ordinance prohibits only the solicitation of funds from occupants of motor vehicles. It does not prohibit solicitation of funds from pedestrians, door-to-door canvassing, or telephone solicitations. *See Acorn*, 798 F.2d at 1271 (finding substantially similar ordinance left open ample alternative channels of communication). Nor does the ordinance restrict oral advocacy, distribution of literature, or other forms of communication and expression.

As the Seventh Circuit noted in upholding a regulation prohibiting solicitations on postal service property:

The distributed literature could adequately explain the organization, how to obtain a membership, and where to send any contribution. In this way, the organization could convey its message without disrup[tion] ... and the recipient would be free to read the message at a later time.

*Nat'l Anti–Drug Coalition, Inc. v. Bolger,* 737 F.2d 717, 726–27 (7th Cir.1984); *accord Acorn,* 798 F.2d at 1271.

We conclude that the ordinance is narrowly tailored to serve a significant governmental interest and leaves open ample alternative channels of communication.

## V.

This court's prior public forum cases are not inconsistent with this conclusion, and do not support appellant's argument. In *Fernandes v. Limmer,* 663 F.2d 619 (5th Cir.1981), we examined an ordinance governing literature distribution and fund solicitation in the Dallas–Fort Worth Airport Complex. We held that the regulation was not carefully tailored, in that it forbade all first amendment activity within the entire airport terminal area. We determined that this included areas in which the airport board had not shown a significant interest in pedestrian traffic control.

In *Beckerman v. City of Tupelo,* 664 F.2d 502 (5th Cir.1981), we struck down an ordinance authorizing the Chief of Police to deny a parade permit if he found that the parade would "probably cause injury to persons or property or provoke disorderly conduct or create a disturbance." *Id.* at 507. We found the ordinance to be overbroad, vague, and an impermissible prior restraint. We also found that certain provisions vested excessive discretion in a public official.

Finally, in *Dallas Acorn v. Dallas County Hospital District,* 670 F.2d 629 (5th Cir.1982), we stated that a hospital may forbid solicitation or leafletting on its grounds if that activity was basically incompatible with the hospital's normal activities. The court found the hospital's "no solicitation rule" unconstitutional because it was vague, and because it granted a hospital administrator unfettered discretion to allow or disallow the dissemination of literature based on content.

The ordinance in the case before us does not suffer from the constitutional deficiencies present in the cases we have just discussed. The Baton Rouge ordinance is also distinguishable from the similar ordinance struck down in *Acorn v. City of New Orleans,* 606 F.Supp. 16 (E.D.La.1984). The New Orleans ordinance prohibited solicitation from pedestrians as well as from occupants of vehicles, and included solicitation in the street even when streets were closed to vehicular traffic.

## VI.

We now turn to the other contentions advanced by appellant, which, upon analysis, appear to be a combination, or at least a meld, of kindred, yet discrete, precepts of constitutional law—the notion of overbreadth, and the first amendment requirement that the government employ the least restrictive means to achieve its goals. For the sake of caution, and in an effort to respect fully the appellant's contentions, we will address each of these precepts in turn.

### A.

Appellant misconceives the nature of the overbreadth doctrine. In *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), the Supreme Court held that a broadly-written statute may have such a deterrent effect on free expression that it should be subject to a facial challenge even by a party whose own conduct may be unprotected. In essence, this is an exception to the usual requirements of standing. The Court has since reiterated the limited purpose of this doctrine: "the underlying justification for the overbreadth exception [is] the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court." *City Council v. Taxpayers for*

*Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984); *see also Airport Comm'rs v. Jews for Jesus,* 482 U.S. 569, 574, 107 S.Ct. 2568, 2571–72, 96 L.Ed. 2d 500 (1987). The cases make clear that "overbreadth" is not simply the converse of "narrowly tailored." In *Vincent,* the Court termed an overbreadth challenge "inappropriate" where "nothing in the record indicate[d] that the ordinance [would] have any different impact on any third parties' interests in free speech than it ha[d] on [appellants']." *Vincent,* 466 U.S. at 801, 104 S.Ct. at 2126.

In the present case, appellant has simply argued that the ordinance would inhibit the first amendment activities of other charitable and religious organizations in East Baton Rouge. As in *Vincent,* appellant here has not demonstrated that the conduct of these groups is "more likely to be protected by the First Amendment than their own...." *Id.* at 802, 104 S.Ct. at 2127. Here, too, it would be "inappropriate in this case to entertain an overbreadth challenge to the ordinance." *Id.*

### B.

Finally, appellant argues that in enacting this ordinance, the city and parish of East Baton Rouge were required to use the least restrictive means of achieving their goal of traffic safety. Appellant here confuses the constitutional standard applicable to public forum cases affecting content-neutral regulation of speech, which is the case here, with the higher standard applicable to cases involving the free exercise of religion. Each of the cases cited by appellant in support of this argument involved a free exercise of religion claim. *See, e.g., Thomas v. Review Board,* 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981); *Callahan v. Woods,* 736 F.2d 1269 (9th Cir.1984). Even though this case involves a religious practice, the Supreme Court has specifically stated that ISKCON's solicitation here *is* not entitled to the higher protection extended to free exercise cases.

The Supreme Court instructs that ISKCON "has no special claim to First Amendment protection as compared to that of other religions who also distribute literature and solicit funds. None of our cases suggest that the inclusion of peripatetic solicitation as part of a church ritual entitles church members to solicitation rights in a public forum superior to those of members of other religious groups that raise money but do not purport to ritualize the process." *Heffron,* 452 U.S. at 652, 101 S.Ct. at 2566. To be sure, the Supreme Court has applied the least restrictive means test to equal protection and strict scrutiny cases, issues which are not relevant here. What we do have here can be simply stated. We have a challenge to a content-neutral regulation, and the Court has clearly explained what tests we must apply: the regulation must be "narrowly tailored to serve a significant government interest," and "must leave open ample alternative channels of communication." *Perry,* 460 U.S. at 45, 103 S.Ct. at 955. As we have concluded, the appellees have met this test.

### VII.

We conclude that the district court did not err in denying injunctive and declaratory relief. The Baton Rouge ordinance is a reasonable regulation designed to preclude solicitation of occupants of vehicles temporarily stopped in traffic or at traffic lights. We are satisfied that the ordinance is narrowly tailored to serve the government's significant interest in regulating traffic flow and promoting roadway safety. The ordinance does not violate the first amendment. The judgment of the court is

AFFIRMED.