Henry H. PRITCHARD II and South
Florida Society for the Advancement
of White People, Plaintiffs,

v.

Roger M. CARLTON, in his official capacity as City Manager of the City of Miami Beach, Florida, City of Miami Beach, Florida, a municipal corporation, International Tile & Stone Exposition, and the Holocaust Memorial Committee, Inc., Defendants.

No. 93–0723–CIV.

United States District Court,
S.D. Florida.

April 21, 1993.

Michael O. Fowler, Nina E. Vinik, American Civil Liberties Union Foundation of Florida, Miami, FL, for plaintiffs.

Laurence Feingold, City Atty., John C. Dellagloria, Chief Deputy City Atty., Donald M. Papy, Sp. Counsel, Miami Beach, FL, for City of Miami Beach, FL and Roger M. Carlton.

Aaron S. Podhurst, Joel S. Perwin, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, for Holocaust Memorial Committee, Inc.

Barry R. Davidson, Coll, Davidson, Carter, Smith, Salter & Barkett, P.A., Miami, FL, for International Tile & Stone Exposition.

### ORDER DENYING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND REQUEST TO ALTER PERMIT

HIGHSMITH, District Judge.

THIS CAUSE comes before the Court upon the Emergency Motion for Temporary Restraining Order submitted by Plaintiffs Henry H. Pritchard and the South Florida Society for the Advancement of White People, filed April 19, 1993; and International Tile and Stone Exposition's Request that the Court Require the City of Miami Beach to Alter a Permit as Issued, filed April 20, 1993.

### PROCEDURAL BACKGROUND

On April 16, 1993, the City of Miami Beach filed an emergency complaint for declaratory judgment, styled *City of Miami Beach, et al. v. Henry Pritchard, et al.*, Case No. 93–06844, in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida. The Honorable Murray Goldman, judge of said court, scheduled a hearing in the matter for April 20, 1993. On April 19, 1993, Plaintiffs, Henry H. Pritchard and the South Florida Society for the Advancement of White People, filed a parallel complaint in federal court requesting a temporary restraining order, preliminary injunction, permanent injunction and declaratory relief.

At the April 20, 1993, hearing in state court, Judge Goldman temporarily abstained from exercising jurisdiction over the matter because of the pending action in federal court. Consequently, this Court scheduled a hearing on the Emergency Motion for a Temporary Restraining Order at 3:00 p.m. on April 20, 1993. At that hearing, the Court granted the motions to intervene as party defendants submitted by International Tile & Stone Exposition and The Holocaust Memo-

rial Committee, Inc., the two additional parties in the state case.

## EVIDENTIARY FINDINGS

On March 29, 1993, Plaintiff Henry H. Pritchard II submitted a special events permit application to the City of Miami Beach. Pritchard, a citizen of Florida, requested the special events permit on behalf of South Florida Society for the Advancement of White People ("Society"), an unincorporated association of which he is the president. The application states that the Society desires to hold a "White Awareness Unity Rally" at the Holocaust Memorial, located within the City of Miami Beach, òn April 24, 1993, between the hours of 4:00 and 6:00 p.m. The stated purpose of the rally is "political speech," and the sponsor's estimate of attendance is approximately 200 persons.

The City of Miami Beach ("Miami Beach") is a Florida municipal corporation. The Holocaust Memorial was built on land owned by Miami Beach, with private funds raised by the Holocaust Memorial Committee, Inc. ("Committee"), a non-profit Florida corporation, pursuant to an agreement between Miami Beach and the Committee. Shortly after construction, the Committee conveyed the improvements on the property to Miami Beach by a bill of sale. The Committee also established a trust fund, whose net income is used exclusively for the maintenance, repair, and general upkeep of the facility. The agreement governing the project vests in the Committee the power to adopt a set of rules and regulations for the use of the Holocaust Memorial.[1]

The Holocaust Memorial consists of a large, rising-hand sculpture, surrounded by smaller statues, all encircled by a reflecting pool. A concentric walkway is girded by a wall where pictures of the Holocaust hang, and where names of thousands of Holocaust victims are inscribed. Because the remains of the persons whose names appear upon the Memorial have been lost, relatives view the Memorial as they would view their loved ones' graves. Survivors of the Holocaust also consider the Memorial to be hallowed ground, akin to a cemetery, where they can experience the catharsis of reliving and confronting the horrors of Nazi concentration camps and pogroms. An open plaza leads to the circular walkway; low-hanging chains separate the plaza from the sidewalk, thereby demarcating the Memorial grounds. It is on this open plaza, past the low-hanging chains, that Pritchard wishes to hold his rally.

In processing Pritchard's application, Roger Carlton, the City Manager, applied Miami Beach City Code § 39-7, pertaining to parades; Miami Beach Resolution No. 88-19321, pertaining to special events permits; and the guidelines published by the Committee for organizations and groups visiting the Holocaust Memorial. One such guideline states, "The Holocaust Memorial should be used for educational events only and never for political programs." Furthermore, the Holocaust Memorial is manned on a daily basis by Holocaust survivors who teach visitors about the horrors of the Nazi extermination program.

In a memorandum dated April 14, 1993, addressed to the Mayor and City Commission, Carlton explored the countervailing interests that would be affected by his decision regarding Pritchard's application.[2] Carlton concluded that all interests, including public safety, would best be protected by offering Pritchard and the Society an alternative site adjacent to the Memorial grounds. Accordingly, on April 15, 1993, Carlton issued a special events permit for April 24, 1993, between the hours of 4:00 and 6:00 p.m., at the area east of the Garden Center, located at

---

1. The rules and regulations must accommodate access by the City, through the Memorial grounds, to adjacent City property known as the Garden Center area.

2. In his memorandum, Carlton noted that "Pritchard's behavior reflects a practice of abusing the privileges granted under the First Amendment," but refused to react in a "Pavlovian" manner to his request. The Court is familiar with Pritchard's practice of selecting sensitive locations and dates to hold his rallies. *See Pritchard v. Mackie*, 811 F.Supp. 665 (S.D.Fla. 1993), where this Court upheld his First Amendment right to hold a Ku Klux Klan rally in the Town of Davie, Florida, on Martin Luther King, Jr. Day.

the southwest corner of Dade Boulevard and Convention Center Drive, a site located approximately 400 feet from the Holocaust Memorial.[3] Although the permit required Pritchard and the Society to post a $25,000 bond or insurance policy and pay a $200 application fee as pre-conditions to holding the rally, Miami Beach waived these monetary prerequisites at the hearing held by the Court on April 20, 1993.[4]

Since the opening of the Holocaust Memorial in February, 1990, neither Miami Beach nor the Committee have granted any request by any person or group to engage in political speech within the grounds of the Memorial. Indeed, at the opening ceremony, the Mayor and other local leaders were not permitted to make speeches. Subsequently, the Committee has denied requests for photo opportunities and public appearances by such diverse personalities and entities as Senator Paul Tsongas; then candidate, now President, Bill Clinton; the German ambassador to the United States; the Jewish Defense League; and B'nai B'rith. Moreover, the Committee insisted and succeeded in removing a plaque that the Miami Beach City Commission had affixed to the Memorial wall.

At the hearing, Pritchard presented several news reports concerning demonstrations held at the Holocaust Memorial. The Court, however, finds that these reported events were held either outside the Memorial grounds or without the prior permission of the Committee or Miami Beach. Indeed, on August 11, 1992, the Committee roundly chastised the Simon Wiesenthal Center for sponsoring one such extemporaneous event on August 10, 1992, and received abject apol-

ogies from its Director, Robert Novak. The Court concludes, therefore, that the Holocaust Memorial's purpose excludes political speech, and that political speech has neither been pre-approved, nor sanctioned after extemporaneous occurrences, by the Committee or by Miami Beach.

## DISCUSSION

■ This case compels the Court to resolve questions concerning the constitutionality, under the First Amendment, of a blanket restriction on political speech within the grounds of the Holocaust Memorial in Miami Beach, Florida.[5] The first issue to be addressed in any challenge to the constitutional validity of a government rule under the First Amendment is whether a First Amendment right exists, "for if it does not, we need go no further." *Cornelius v. NAACP Legal Defense & Educational Fund, Inc.*, 473 U.S. 788, 797, 105 S.Ct. 3439, 3446, 87 L.Ed.2d 567 (1985). The speech component of the First Amendment is far-reaching and includes various methods of communication, including a political speech or rally. *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390, 89 S.Ct. 1794, 1806, 23 L.Ed.2d 371 (1969) (First Amendment confers "a right of the public to receive suitable access to social, political, esthetic, moral and other ideas and expressions."). Consequently, Pritchard's desire to hold a demonstration and rally at the Holocaust Memorial is protected by the First Amendment.[6]

■ The second issue that this Court must determine is the validity of Miami Beach's anti-political speech regulation ("regulation"), as applied to the Holocaust Memo-

---

**3.** The Court received evidence from International Tile and Stone Exposition, who objects to the timing of the rally because it conflicts with their trade show at the nearby Miami Beach Convention Center. Although the Court recognizes the important commercial interests advanced by this party, including commercial speech, the Court finds that such interests do not rise to the level necessary for challenging the permit as issued by Miami Beach. Moreover, according to the testimony of Miami Beach's Police Chief, Miami Beach is making every effort to minimize disruption of the trade show.

**4.** The Court notes that, pursuant to a permit clause, the application fee and bond were subject

to waiver upon Pritchard's and the Society's demonstration of financial inability to pay the fee or secure the bond. The Court finds that Pritchard did not seek such a waiver prior to challenging these monetary conditions in his motion for temporary restraining order. The waiver by Miami Beach in open court, however, has mooted this issue.

**5.** This is an issue of first impression in this Court.

**6.** The First Amendment provides, in pertinent part, "Congress shall make no law ... abridging the freedom of speech." *U.S. Const.*, Amend. I.

rial.[7]  At the outset, it is important to note that the Constitution does not require the government to "grant access to all who wish to exercise their right to free speech on every type of government property." *Cornelius*, 473 U.S. at 799–800, 105 S.Ct. at 3447. In fact, a government has the same rights as a private owner of property to preserve the property under its control for the use to which it is lawfully dedicated. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46, 103 S.Ct. 948, 956, 74 L.Ed.2d 794 (1983).

■ "The Supreme Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *Intern. Soc. for Krishna Consciousness v. Baton Rouge*, 876 F.2d 494, 496 (5th Cir.1989). Therefore, the Court must determine whether the Holocaust Memorial is a traditional public forum, a public forum created by designation, or a non-public forum. *Perry*, 460 U.S. at 45, 103 S.Ct. at 955. In effect, the Court must "identify the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic." *Cornelius*, 473 U.S. at 797, 105 S.Ct. at 3446.

### A. Traditional Public Fora

■ Pritchard argues that the Holocaust Memorial is a traditional public forum, as opposed to a designated or non-public forum. A traditional public forum, however, is a place which "by long tradition or by government fiat has been devoted to assembly and debate." *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3449. *See also Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1939) ("Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."). The Supreme Court has established that traditional public fora are limited to a community's public streets, parks and sidewalks. *Perry*, 460 U.S. at 45, 103 S.Ct. at 955. The Holocaust Memorial is neither a park nor a sidewalk, and it has never been devoted to assembly and debate. Consequently, the Court has little difficulty in deciding that the Holocaust Memorial is not a traditional public forum.

### B. Designated Public Fora and Non–Public Fora

■ The more challenging issue in this case is the determination of whether the Holocaust Memorial is a designated public forum or a non-public forum.[8]  A designated public forum is "a public forum created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3449. This includes public property which the government has opened for use by the public as a place for expressive activity. *Perry*, 460 U.S. at 45, 103 S.Ct. at 955. Designated public fora include the student center of a state university, *Widmar v. Vincent*, 454 U.S. 263, 267–69, 102 S.Ct. 269, 273–74, 70 L.Ed.2d 440 (1981); a state fair-

---

7. Miami Beach has stated that the reason for denying Pritchard's permit request is that the rally poses a clear and present danger to the public and to Pritchard. At the hearing, however, Miami Beach indicated that even if the rally did not pose a clear and present danger, it would deny Pritchard's permit request because the Holocaust Memorial Guidelines expressly prohibit "political programs" and only allow educational events on the grounds of the Holocaust Memorial. Although there is evidence to support a finding of clear and present danger of imminent violence at the Holocaust Memorial, because of the unique nature of the forum and the speaker, the Court will not address that issue.

8. "After *Perry* it is clear that it is very important into which category the alleged public forum falls; what is much less clear from *Perry* is what test the courts should use to decide whether—for example, a school classroom—is in the second category or the third category. The *Perry* majority really offered no precise test to distinguish between the second category (public property opened for use by the public as a place for expressive activity) and the third category (public property not by designation or tradition a forum for public communication)." Ronald D. Rotunda & John E. Nowak, 4 *Treatise on Constitutional Law* § 20.47 (1992).

ground, *Heffron v. Intl. Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 655, 101 S.Ct. 2559, 2568, 69 L.Ed.2d 298 (1981); and a municipal theater, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555, 95 S.Ct. 1239, 1245, 43 L.Ed.2d 448 (1975).

A non-public forum is a publicly owned facility that has been "dedicated to use for either communicative or non-communicative purposes but has never been designated for indiscriminate expressive activity by the general public." *Gregoire v. Centennial School Dist.*, 907 F.2d 1366, 1371 (3rd. Cir.1990), *cert. denied*, 498 U.S. 899, 111 S.Ct. 253, 112 L.Ed.2d 211 (1990). In this forum, the government "may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *United States Postal Service v. Council of Greenburgh*, 453 U.S. 114, 131 n. 7, 101 S.Ct. 2676, 2686 n. 7, 69 L.Ed.2d 517 (1981), *cert. denied*, 453 U.S. 917, 101 S.Ct. 3150, 69 L.Ed.2d 999 (1981). In particular fact settings, courts have held that non-public fora include a sidewalk connecting a post office to its parking lot, *United States v. Kokinda*, 497 U.S. 720, 748–49, 110 S.Ct. 3115, 3131, 111 L.Ed.2d 571 (1990); a military base, *Greer v. Spock*, 424 U.S. 828, 836, 96 S.Ct. 1211, 1216–17, 47 L.Ed.2d 505 (1976); a county prison, *Adderley v. Florida*, 385 U.S. 39, 48, 87 S.Ct. 242, 247–48, 17 L.Ed.2d 149 (1966), *rehearing denied*, 385 U.S. 1020, 87 S.Ct. 698, 17 L.Ed.2d 559 (1967); and a city bus, *Lehman v. City of Shaker Heights*, 418 U.S. 298, 302–04, 94 S.Ct. 2714, 2716–18, 41 L.Ed.2d 770 (1974).

### C. Analysis

To create a designated public forum, a government must intentionally open a nontraditional forum for public discourse. *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3448–49. The Supreme Court has set out several criteria that a court must examine to ascertain the government's intent. *Amato v. Wilentz*, 753 F.Supp. 543, 554 (D.N.J.1990), *vacated on other grounds*, 952 F.2d 742 (3rd Cir.1991). In particular, reviewing courts should examine the policy and practices of the government, the nature of the property, the compatibility of the property with expressive activity, and the extent of the use granted. *Cornelius*, 473 U.S. at 802, 105 S.Ct. at 3448–49; *Perry*, 460 U.S. at 46–47, 103 S.Ct. at 955–56. Most importantly, courts should determine how the facility has been managed in the past. *See* Melville B. Nimmer, *Nimmer on Freedom of Speech* 237 (Cum.Supp.1992) ("Particularly when there is a track record of granting access to other groups similar to the group seeking access, courts will be very reluctant to find that a facility is not a designated public forum."). *See also* G. Sidney Buchanan, *The Case of the Vanishing Public Forum*, 1991 U.Ill.L.Rev. 949, 956 (1991) ("The distinction between a designated public forum and a non-public forum depends to a large extent upon the history of governmental action in relation to the forum.").

Pursuant to the agreement governing the Holocaust Memorial, Miami Beach honors the Committee's rules and regulations for use of the Memorial. The Committee has never allowed a person or group to conduct a political rally or speech on the grounds of the Holocaust Memorial. In fact, the Court has found credible the anecdotal evidence presented by Miami Beach concerning denial of all previous requests for political speech permits at the Holocaust Memorial. This practice started at the opening ceremonies of the Holocaust Memorial in February, 1990. At that time, the Committee refused to allow Miami Beach Mayor Alex Daoud and other visiting dignitaries and local leaders to speak on the grounds of the Holocaust Memorial. This practice has continued without exception. In the last two years, the Committee has refused to grant political speech permit requests submitted by political candidates, such as President Bill Clinton and Senator Paul Tsongas, foreign dignitaries, such as the German Ambassador to the United States, and even Jewish political groups, such as the Jewish Defense League and B'nai B'rith. Furthermore, the Holocaust Memorial is manned on a daily basis by Holocaust survivors who teach visitors about the horrors of the Nazi extermination program. Finally, it is important to note that *all* non-educational

events on the grounds of the Holocaust Memorial are forbidden. For instance, the Committee forbids any solicitation or advertising in connection with the Holocaust Memorial.

In light of these practices, governmental action is wholly consistent with the nature of the property and its incompatibility with political expressive activity. The Holocaust Memorial is not a park, it is not a street, and it is not a sidewalk. It is a highly unique forum steeped in the background of the near-extermination of the Jewish people. The testimony presented to the Court clearly demonstrates that the Holocaust Memorial is a place of reverence, meditation, and contemplation. In fact, it is a place where all citizens can find solace and the spiritual treatment of whatever they feel that the memorial represents to them. The Holocaust Memorial is akin to a hospital, albeit a healing center designed and intended, *inter alia,* to promote "spiritual healing." [9]

It seems that the Supreme Court has never directly addressed the issue of whether a hospital (or a memorial) is a designated public forum or a non-public forum. *Low Income People v. Manning,* 615 F.Supp. 501, 514 (D.C.Ohio 1985). In viewing the Holocaust Memorial as the equivalent of a spiritual hospital, however, the Court notes that for purposes of public forum analysis, hospitals are considered non-public forums, at least in areas of the hospital where the offending activity is incompatible with the hospital's normal activities. *Intern. Soc. for Krishna Consciousness v. Baton Rouge,* 876 F.2d 494, 499 (5th Cir.1989) (citing *Dallas Acorn v. Dallas County Hospital District,* 670 F.2d 629 (5th Cir.1982)). The mere fact that the Holocaust Memorial, like a hospital, may be used indirectly for the communication of ideas does not transform it into a public forum. *See Lehman,* 418 U.S. at 304, 94 S.Ct. at 2717–18 (emphasis added) ("Were we

to hold to the contrary, display cases in *public hospitals,* libraries, office buildings, military compounds, and other public facilities immediately would become Hyde Parks open to every would-be pamphleteer and politician.").

Only a handful of courts have examined the issue of whether a monument or memorial is a public forum or a non-public forum. [10] *See Henderson v. Lujan,* 964 F.2d 1179 (D.C.Cir.1992). In *Henderson,* the Circuit Court examined the issue of whether the National Park Service could prohibit the distribution of leaflets on city sidewalks near the Vietnam Veterans Memorial. The Park Service argued that the regulation prohibiting this activity was intended to "maintain an atmosphere of calm, tranquility and reverence" at the Memorial. *Henderson,* 964 F.2d at 1181. The Court, however, found that the sidewalk was a traditional public forum because it was indistinguishable from nearby city sidewalks. *Id.* at 1182. The Court did not reach the issue of whether the paths leading directly to the Memorial or the Memorial itself was a public forum. *Id.* at 1182 ("We do not, of course, reach the status of the curvilinear paths leading to the Memorial wall; their evidently more specialized use may outweigh the attributes that would otherwise mark them as public forums.").

Pritchard's permit request specifically asks for permission to conduct a rally *on the grounds* of the Holocaust Memorial, not on an adjoining sidewalk. The location of the rally would be in an open plaza, located *inside* the low-hanging chains that demarcate the Holocaust Memorial grounds. In this respect, the requested location of the rally does not resemble a traditional sidewalk, such as the sidewalks between the United States Supreme Court building and the street. *See United States v. Grace,* 461 U.S. 171, 176, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736

---

**9.** Addressing the importance of the "tranquil, contemplative mood at the Vietnam Veterans Memorial wall—perhaps awe captures it better," in an analysis of a time, place and manner restriction imposed by the National Park Service, the D.C. Circuit noted that, "Values are no less significant for being subtle, intangible and non-quantifiable." *Henderson v. Lujan,* 964 F.2d 1179, 1184 (D.C.Cir.1992).

**10.** The primary reason why few cases involving memorials, such as the Lincoln Memorial, the Jefferson Memorial, the Washington Monument, or the Vietnam Veterans Memorial have been decided is that Congress has imposed various restrictions on First Amendment activities at these locations. 36 C.F.R. § 7.96(j)(2)(vi) (1991).

(1983) ("There is no separation, no fence, and no indication whatever to persons stepping from the street that they have entered some special type of enclave.").

The Court also notes that Miami Beach did not deny Pritchard a permit to conduct a political speech in Miami Beach. In fact, Miami Beach granted a permit for Pritchard to conduct a rally at an adjacent and safe public area. Although Pritchard is not satisfied with this alternative, Miami Beach's actions have left open to Pritchard ample alternative channels of communication. *Intern. Soc. for Krishna Conscious.*, 876 F.2d at 498. Therefore, the Court concludes that the regulation is reasonable and not an effort to suppress expression merely because Miami Beach may oppose Pritchard's controversial views. Consequently, the permit, as issued, satisfies First Amendment criteria.

### CONCLUSION

This Court cannot second-guess Miami Beach's decision to cooperate with the Holocaust Memorial Committee, Inc., in establishing and maintaining a Holocaust Memorial. If Miami Beach had sold the site to the Committee, then delicate First Amendment issues, such as the right of a white supremacist to conduct a rally on the grounds of the Holocaust Memorial, would not have arisen. This Court is convinced, however, that the Founding Fathers, in their wisdom of devising the First Amendment, did not intend that all government property, regardless of its intended purpose and use, must be opened to all forms of speech by all interested speakers.

Accordingly, it is hereby,

ORDERED AND ADJUDGED that, pursuant to *Fed.R.Civ.P.* 65(b) and (d), the Emergency Motion for a Temporary Restraining Order, submitted by Plaintiffs Henry H. Pritchard and South Florida Society for the Advancement of White People, is DENIED. It is further

ORDERED AND ADJUDGED that International Tile and Stone Exposition's request that the Court require Miami Beach to alter the permit's date and/or time is DENIED.

DONE AND ORDERED.