Joshua **WEXLER**, et. al.,

v.

**CITY OF NEW ORLEANS**, et. al.

**Civil Action No. 03–990.**

United States District Court, E.D. Louisiana.

June 16, 2003.

Robert Scott Eitel, Robert S. Eitel, LLC, New Orleans, LA, Dana Berliner, William H. Mellor, Washington, DC, for plaintiffs.

Evelyn Foley Pugh, Edward Reed Washington, III, Sherry Sabolyk Landry, New Orleans, LA, for defendants.

## MINUTE ENTRY

DUVAL, District Judge.

Before this Court is plaintiffs' Motion for a Preliminary Injunction, (Rec.Doc.13), protecting the plaintiffs, Joshua Wexler and Anne Jordan Blanton from a city ordinance that has prevented them from selling books on the sidewalks anywhere in the city of New Orleans. After reviewing the ordinance and the arguments advanced by the parties, this Court finds, for the reasons stated below, that the prerequisites for granting a preliminary injunction have been met and that plaintiffs' Motion is hereby **GRANTED.**

### A. Facts

The circumstances underlying the plaintiffs' request for a preliminary injunction to enjoin the enforcement of the City's Ordinance preventing the plaintiffs from selling books on the streets of New Orleans were recounted in the Court's Order dated April 15, 2003. However, because the Court held a hearing on the preliminary injunction on April 30, 2003, the instant motion necessitates a recitation of the pertinent facts elicited during the hearing.

The plaintiffs Joshua Wexler ("Wexler") and Anne Jordan Blanton ("Blanton") are New Orleans residents who want to start a business selling quality literature and blank journals on the streets of New Orleans. Together they have amassed a stock of over 500 books, including literary classics, children's books, contemporary literature, art books, and philosophy. Among the titles are *The Fountainhead, Being and Nothingness, To Kill a Mockingbird, 1984,* and *The Color Purple.* According to the testimony of the plaintiffs, none of the books that the plaintiffs wish to vend are obscene or appeal to sexually prurient interests.

On April 30, 2003, the Court held a hearing on the plaintiffs' motion. Plaintiffs's counsel called both Wexler and Blanton to testify regarding their attempts to obtain a permit to vend books beginning in October of 2001. The plaintiffs testified that they wish to sell blank journals and used books in the Uptown neighborhood or in the Fauborg–Marigny. However, on several different occasions when the plaintiffs inquired about obtaining a permit, city officials informed them that selling books was illegal without a permit and no permit to vend books existed. Blanton testified that she called and visited the Department of Finance for the City of New Orleans to inquire about obtaining a book permit. Both attempts met with the same result; she was informed that a book permit did not exist. However, upon a visit to the Department, one employee informed Blanton that she could obtain a permit to sell pencils. At no time did any official suggest to Blanton or Wexler that books were considered novelties and that they could obtain a novelty permit to sell books.

Having made no headway at the Department of Finance, the plaintiffs brought their quest to the city attorney's office. Wexler spoke with Ms. Pugh who also informed him that he could not obtain a permit for vending books and could not vend books from the sidewalk. Ms. Pugh did not suggest that there was alternative permit for which he could apply and use to sell books legally.

Wexler and Blanton both testified that they have refrained from opening their book vending business because they do not want to run an illegal business or subject themselves to possible arrest, citation, fine, or shut-down. They testified that since the Court granted its Motion for a Temporary Restraining Order on April 15, 2003, they have conducted their book vending business almost daily: once in the Uptown area near Audubon Park, but mostly in the Fabourg–Marigny at the intersection of Esplanade and Decatur streets. They testified that they do not want to sell their books door to door or from a van and prefer to sell their books from a table. They informed the Court that it would be impractical to sell books from anything other than a table because they have too many books to carry and need to be able to arrange them so that people can see them. Wexler testified that selling them from a blanket could create more congestion because people would have to crouch to see the titles.

Blanton and Wexler also indicated that they have no interest in selling books in the French Quarter or French Market because they want their customers to be locals, not tourists. They view their book vending business as something that will enhance the community because often their customers enjoy discussing books with the plaintiffs as they browse the selection.

The ordinance in question outlines the different categories of activities that require a permit. The ordinance reads:

[E]very person who shall desire to use the public streets, sidewalks or other public or private places of business establishments for the conduct of any of the businesses or callings hereinafter set forth or to hold meetings or rallies or public entertainment in private or public halls or places shall first apply to and obtain from the department of finance a permit.

City of New Orleans Permit Ordinance § 30–69. The ordinance then sets forth a fee schedule listing items for which an applicant can obtain a permit. An applicant may obtain a permit to sell items such as novelties, candles on foot or from a push-cart, home-manufactured or home-grown products on foot, razor blades, toilet articles, pencils, and shoe laces, commercial literature, or hand-made artifacts. The ordinance does not explicitly provide for the sale of books.

The plaintiffs argue that the city's ordinance is an impermissible content-based restriction because it prohibits the sale of books, a traditionally protected form of speech, while allowing other forms of speech such as the distribution of commercial literature, display and sale of artwork, and street performances. *See* City of New Orleans Permit Ordinance § 30–70, §§ 110–121, et seq. In the alternative, the plaintiffs argue that even if the ordinance is content neutral, the prohibition on book vending is an unreasonable time, place, and manner restriction because it is not narrowly tailored to serve a significant government interest and does not leave open ample alternative channels of communication. Finally, the plaintiffs argue that they should be entitled to sell their books and journals from a table.

The City responds that the ordinance is content-neutral and can be construed to allow would-be book vendors to obtain a permit by applying for a soliciting permit. The city argues that soliciting includes selling books and that the plaintiffs would be able to sell books on foot in the locations permitted by the ordinance. The City maintains that under the ordinance, plaintiffs may not sell their books from a table because the ordinance pertaining to solicitation does not provide for the sale of

books from a table. The City also argues that this case is not about a First Amendment right, but rather whether the plaintiffs have a constitutional right to sell their books from a table. Because it is the City's position that the ordinance allows books to be sold with a solicitation permit, it also contends that prohibiting the plaintiffs from using a table is a reasonable time, place, and manner restriction because the plaintiffs do not have a constitutional right to erect a structure on the public sidewalk.

## B. Discussion

### 1. Pre-requisites for granting a Preliminary Injunction

■ The plaintiffs request that the Court issue a Preliminary Injunction permitting them to sell their books on the sidewalks of the Fabourg–Marigny or near Audubon park. The prerequisites for issuance of a preliminary injunction are as follows:

(1) a substantial likelihood that the movant will prevail on the merits;

(2) a substantial threat that irreparable harm will result if the injunction is not granted;

(3) the threatened injury outweighs the threatened harm to the defendant; and

(4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir.1987).

### (1) A substantial likelihood that movant will prevail on the merits

The Court finds that there is a substantial likelihood that the plaintiffs will prevail on the merits.

### (a) The First Amendment applies to this case

■ The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press; or the right of the people peaceably to assemble and to petition the government for a redress of grievances." U.S. Constitution, Amendment I. Freedom of speech and freedom of the press are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action. *See Lovell v. City of Griffin,* 303 U.S. 444, 448, 58 S.Ct. 666, 82 L.Ed. 949 (1938). Municipal ordinances adopted under state authority constitute state action and are within the ambit of the First and Fourteenth Amendments. The ordinance in this case was promulgated by the City of New Orleans and thus falls within the scope of these amendments.

The City argues that this case does not implicate the First Amendment. It maintains that because the ordinance allows book selling under the category of "solicitation," the real bone of contention is whether the plaintiffs can erect a table on the sidewalk or must resort to another method of selling such as carrying books in a satchel or selling books from a van. At the heart of the City's argument, lies its contention that the ordinance contains a section that allows individuals to apply for permits for "solicitation" and that book vending falls into that category. The section relating to permits for solicitors states:

(a) Any person desiring to use the city streets, sidewalks or public rights-of-way:

\*    \*    \*    \*    \*    \*

(2) Canvass or solicit on city streets, sidewalks or house to house for commercial purposes,

shall first apply to and receive a permit from the department of finance.

New Orleans City Ordinance, Article III, sec. 110–222. At first glance it appears that this section of the statute may apply to book vending. However, the Court is not convinced by this argument for several reasons. First, when viewed in its entirety, the ordinance does not contemplate book vending. It provides for various other types of permits specifically, but nothing that specifically relates to the sale of literature.

Second, and most notably, the City has changed its position several times on whether the statute provides for a book permit. Initially, the City took the position that there was no permit for book vending and therefore selling books without a permit could lead to a fine, citation, or possible arrest. City officials specifically refused to allow the plaintiffs to even apply for a permit to vend books. After the plaintiffs filed a complaint with this Court, and at the informal hearing on April 14, 2003, the city took the position that the ordinance did not ban book selling because the plaintiffs could sell books with a novelty permit. In its Order issuing a TRO, the Court rejected the theory that books were novelties and found that the ordinance constituted a blanket prohibition on book selling. Now, the City advances the contention that books fall within the permit category reserved for "solicitors." The City's indecision in its interpretation of whether the statute provides for a book vending permit calls into question their argument that the solicitation section applies in this case.

Third, it is not clear that the plaintiffs' book vending operation falls within the common sense meaning of solicitation. Al-though one of the primary goals of the plaintiffs' book vending business is commercial, the plaintiffs testified that they do not actively solicit pedestrians and passerbys. Additionally, the sale of other forms of expression, such as artwork, is similarly commercial in character and yet not lumped into the solicitation permit category. *See* New Orleans City Ordinance, Article III, section 110–121 et. seq. For the foregoing reasons and because the plaintiffs were initially barred from applying for a permit because city officials informed them that a permit for book vending was non-existent, the Court finds that the ordinance does not apply to book vending. Therefore, the Court also finds that the ordinance operates as an overriding ban on book-selling.

As a consequence of this finding, the First Amendment applies in this case because book selling is a form of expression. It has long been settled that the sale or distribution of literature in a public sidewalk is protected speech. *See Smith v. California*, 361 U.S. 147, 149–50, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); *Lovell v. City of Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1034 (7th Cir.2002). In *Smith*, the Supreme Court found that retail book selling plays a significant role in the distribution of books and that its commercial nature does not diminish its protection. *Smith*, 361 U.S. at 150, 80 S.Ct. 215. *Id.*

Additionally, the area in which the plaintiffs want to vend their books is a quintessential public forum where government may not prohibit all expressive activity. *Perry v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1034 (7th Cir. 2002). Public sidewalks, streets and parks have long been acknowledged as tradition-

al public fora which "have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *International Society For Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 497 (5th Cir.1989)(citing *Hague v. CIO*, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939)). As such, the government's ability to restrict speech in these areas is limited. *Id.; Weinberg*, 310 F.3d at 1034. The level of scrutiny a court uses to review the applicable restriction depends upon whether the restriction is content-based or content neutral. *International Society For Krishna Consciousness of New Orleans, Inc.*, 876 F.2d at 497. If the restriction is content-based and distinguishes between prohibited and permitted speech based on its content, the court must find that the regulation is necessary to serve a compelling state interest, and is narrowly drawn to achieve that end. *International Society For Krishna Consciousness of New Orleans, Inc.*, 876 F.2d at 497. If the regulation in force is content neutral and also regulates time, place, and manner of expression, it must be narrowly tailored to serve a significant governmental interest, leaving open ample alternative channels of communication. *Id.*

As mentioned previously, the City argues that the ordinance is content-neutral. The plaintiffs counter-argue that the prohibition on book-selling is content-based because the permit scheme allows for other types of expressive conduct and because the plaintiffs exercise editorial selection in choosing which books to sell.

■ The Supreme Court has observed that "deciding whether a particular regulation is content-based or content-neutral is not always a simple task." *Horton v. City of Houston*, 179 F.3d 188, 193 (5th Cir.1999). A regulation that is content-based distinguishes "favored speech from disfavored speech on the basis of ideas or views expressed. . . ." *Id.* "Thus a rule that is applied because of disagreement with a message presented or a rule that has a substantial risk of eliminating certain ideas or viewpoints from the public dialogue are [sic] content-based." *Id.* However, if the regulation is justified without reference to the content of the speech or serves purposes unrelated to the content, it is a content-neutral regulation, even if it has an incidental effect on some speakers or messages but not on others. *Id.* Here, the fact that the ordinance does not provide for a book vending permit is more consistent with the characteristics of a content-neutral regulation, rather than one that is content-based. Just because the fact that street performers are entitled to a permit and book vendors are not, does not conclusively illustrate that the justification was based on the content of the message, or the organization or individual promoting the speech. *See Weinberg*, 310 F.3d at 1037 (finding that a city ordinance banning book selling near athletic stadium was content-neutral even though the ordinance permitted newspaper vending). The ban applies even handedly to everyone regardless of their viewpoint. *ISKON*, 876 F.2d at 497. Additionally, there is no evidence that the content of the plaintiff's message was in mind when the City enacted the ordinance. The law does not refer to any specific content, it is merely a general prohibition on book selling. While the ordinance may raise the question of whether or not it is narrowly tailored or leaves open ample alternatives, it does not raise concerns about the content neutrality of the ordinance. Thus, the Court finds that ordinance to be content-neutral.

■ In order for a content-neutral ordinance to restrict the time, place, and

manner in which one can sell goods and coexist with First Amendment, "the restrictions must be justified without reference to the content of the regulated speech, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication." *See Weinberg v. City of Chicago,* 310 F.3d 1029, 1036 (7th Cir.2002); *see also Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Because the City does not allow the plaintiffs to sell their books anywhere in New Orleans, it also fails to leave open ample alternative channels of communication. Thus, one cannot argue that the ordinance, with its absolute prohibition on book selling, is narrowly tailored to serve a significant government interest. Hence, the ordinance must fail as a reasonable time, place, and manner restriction.

Even if the Court had adopted the City's view that the solicitation permit encompassed book selling, the provision would still unreasonably restrict the conduct because the plaintiffs are precluded from using a table. The City resists the idea of a table for two reasons: 1) a table will cause congestion and 2) the plaintiffs do not have a constitutional right to use a table to sell their books. As to the first argument, the City has produced no evidence that table vending causes more congestion than selling books from a blanket or a van. In *Weinberg,* the court rejected the City of Chicago's safety and congestion concerns because the City failed to put on any credible evidence to establish this fact. *Weinberg,* 310 F.3d at 1037. The City of Chicago's sole testimony came from two "self-interested" police officers and the video that the City of Chicago presented showed no congestion and actually contradicted the officers' testimony. *Id.* In finding that the City of Chicago's ban on book

selling was not a reasonable time, place, or manner restriction, the Court stated that,

> [T]he City of Chicago has provided no objective evidence that traffic flow on the sidewalk or street is disrupted when Mr. Weinberg sells his book. The City offered no empirical studies, no police records, no reported injuries, nor evidence of any law suits filed.... Using a speech restrictive blanket with little or no factual justification flies in the face of preserving one of our most cherished rights.

*Weinberg,* 310 F.3d at 1039. In the instant case, the City of New Orleans did not put on a single witness or any evidence to establish that book vending from a table would cause congestion or create a hazard for pedestrians. Nothing in the record supports the City's contention that the plaintiffs' activity will cause congestion or disturbance. In fact, the exhibits that the plaintiffs have submitted of the sidewalk area they wish to use illustrate that there is ample space for pedestrian traffic and for the plaintiffs to conduct their business.

The City's second argument, is that the plaintiffs do not have a constitutional right to use a table to sell their books per *Graff v. City of Chicago,* 9 F.3d 1309 (7th Cir. 1993) which dealt with the constitutionality of Chicago's ordinance requiring individuals to purchase a permit before erecting a newsstand on public sidewalks. In *Graff,* the Seventh Circuit found that no person has a constitutional right to erect or maintain a structure on the public way. *Id.* at 1314. Additionally, unlike the case at bar, in *Graff,* the City regulation did not result in a blanket prohibition on the erection of a newsstand. Rather it merely required individuals to comply with the ordinance and purchase a permit before they could maintain a newsstand.

The City of New Orleans argues that the plaintiffs have ample alternatives be-

cause they could sell their books from a bag or a van. However, the Court finds that there is no other reasonable method for the plaintiffs to display an array of books other than by using a table. In fact, a table is one of the least bothersome ways of selling books on the sidewalk because it is relatively small an easy to remove. Tables are neither permanent nor affixed to the sidewalk. It is impractical and borderline absurd to consider that "an ample alternative" would be for plaintiffs to carry their books in a bag or sell them out of a van. In fact, the use of a table may be the only reasonable method for this form of expression to take place.

■ The City also argues that the plaintiffs have ample alternative channels of communication because the plaintiffs could apply for a permit to sell their books in the French Market in the French Quarter, or simply sell their books from a store like other proprietors. However, the plaintiffs have testified that they are not interested in selling to tourists in the French Quarter and want to develop a niche business that sells to local customers. An alternative is not adequate if it "forecloses a speaker's ability to reach one audience even if allows the speaker to reach other groups." *Weinberg*, F.3d at 1041 (citing *Gresham v. Peterson*, 225 F.3d 899, 906 (7th Cir.2000)). Thus, even if the Court had found that the City ordinance allowed the plaintiffs to distribute books, but still precluded them from using a table on the sidewalk to do so, the ordinance would remain an unreasonable time, place, and manner restriction.

In conclusion, the City is correct in their assertion that the right to maintain a structure on the public way is not entitled to constitutional protection. That being said, the City is also still charged with the obligation of drafting ordinances that avoid trampling on First Amendment freedoms.

A content-neutral regulation must be a reasonable, time, place, and manner restriction, which affords ample alternative channels of communication. An ordinance, like the one the City of New Orleans adopted, that operates as a blanket ban on book selling or under the City's interpretation, prohibits book selling from a small easily moveable table is an unreasonable restriction that does not provide ample alternative channels of communication.

For the foregoing reasons, the Court concludes that the plaintiffs are likely to succeed on the merits of their claim.

### (b) Irreparable harm

■ Because the Court finds the ordinance unjustly infringes upon First Amendment freedoms, there is a substantial threat that irreparable harm will result if the temporary restraining order is not granted. "It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir.1981); *Howell v. City of New Orleans*, 844 F.Supp. 292, 294 (E.D.La.1994).

### (c) Threatened injury to plaintiffs outweighs the threatened harm to defendant

■ The threatened injury to plaintiffs outweighs the threatened harm to the defendant. Plaintiffs will be denied First Amendment freedoms if the ordinance is enforced whereas the defendant does not appear to be at risk of suffering any harm. Thus in balancing the equities, the scale tips in favor of the plaintiffs.

### (d) The public interest

■ Finally, granting the preliminary injunction will not disserve the public interest. The public interest is best served

by enjoining the effect of any ordinance which limits potentially constitutionally protected expression until it can be conclusively determined that the ordinance withstands constitutional scrutiny.

**CONSIDERING THE FOREGOING,**

**IT IS ORDERED** that pursuant to Rule 65 of the Federal Rules of Evidence the Plaintiffs' Motion for a Preliminary Injunction, (Rec.Doc.13) is **GRANTED** and is hereby converted into a Permanent Injunction, effective this date.

**IT IS FURTHER ORDERED** that, effective this date, Defendant City of New Orleans and all persons acting in concert or participation with defendant, or pursuant to its authority, direction, or control, including its agents, servants, employees, and partners, **ARE HEREBY RESTRAINED FROM** enforcing the City of New Orleans Permit Ordinance against the plaintiffs until further order of this Court.

**IT IS FURTHER ORDERED** that the plaintiffs may begin selling their books on a table that is no more than 5 feet long by 2.5 feet wide at one of two locations: 1) on the public sidewalks near Audubon Park, or 2) on the public sidewalk at the intersection of Esplanade Street and Decatur Street; provided that the paved portion of the sidewalks at these locations are at least 12 feet or more wide. Additionally, the table must be placed as close to the curbside as possible for the convenient operation of the plaintiffs' business, but no closer than 18 inches from the curbside and at least 30 feet behind a bus stop sign and at least 5 feet from the approach side of a crosswalk to an intersection. *See* City of New Orleans Permit Ordinance § 110–88. Additionally, the plaintiffs may not leave the table unattended for more than 15 minutes.

**IT IS FURTHER ORDERED** that the purpose of these restrictions is to ensure that the plaintiffs will not unduly obstruct pedestrian traffic over the sidewalk impacted and to prevent interference with any business establishment, home, or private property.

**IT IS FURTHER ORDERED** that in the event there is a violation of this order by the plaintiffs, the city attorney shall apprize the court.