TOGA SOCIETY, INC., d/b/a
Krewe of Aladdin

v.

Harry LEE, Jefferson Parish
Sheriff, et al.

No. CIV.A. 03–2981.

United States District Court,
E.D. Louisiana.

June 18, 2004.

Louis Roy Koerner, Jr., Law Offices of Louis R. Koerner, Jr., Adam Stewart Lambert, Attorney at Law, New Orleans, LA, for Plaintiff.

Kenneth Charles Fonte, Golden & Fonte, Metairie, LA, for defendant, Harry Lee, Jefferson Parish Sheriff.

Thomas P. Anzelmo, Kyle P. Kirsch, Andre Jude Lagarde, McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, Metairie, LA, for defendants, Jefferson Parish and William Lazaro, Jr.

Andre P. Guichard, Attorney at Law, Clarence F. Favret, III, Brad P. Scott, Favret, Demarest, Russo & Lutkewitte, New Orleans, LA, for Movants.

## ORDER AND REASONS

DUVAL, District Court J.

Before the Court are a Motion for Partial Summary Judgment filed by Toga Society, Inc. d/b/a the Krewe of Aladdin ("Toga" or "Aladdin") and a Motion to Dismiss filed by William Lazaro, Jr., Jefferson Parish Carnival/Mardi Gras & Special Events Office Director, in his official capacity ("Lazaro"), and the Parish of Jefferson ("Jefferson Parish"). This dispute arises out of a Jefferson Parish ordinance that required the payment of security costs to obtain a Mardi Gras parade permit and its application with respect to Toga. Defendants are Jefferson Parish, Lazaro, and Jefferson Parish Sheriff Harry Lee ("Lee"), sued both individually and in his official capacity. Lee has not filed any motion. Since the time the motions were filed, the subject ordinance was revised by the Parish of Jefferson Parish eliminating the security costs requirement. This action on the part of Jefferson Parish has rendered some of the issues before the Court moot. As to the remaining claims, the Court finds as follows.

## I. BACKGROUND

Prior to Lee's election to office of Jefferson Parish Sheriff, 100 % of the costs of all Carnival parades in Jefferson Parish was funded by the Jefferson Parish Council through the general fund.[1] Sometime in the early 1980's, Lee informed the Parish that the Sheriff's budget could and would absorb those costs. Consequently, the Council stopped paying for police protection for Carnival parades.

In 1985, Lee approached three newly formed Mardi Gras "krewes"[2] (Vulcan,

---

1. This background information is taken from plaintiff's uncontested facts. Where there is ambiguity or disagreement with those uncontested facts, it is so noted.

2. This term refers to the organizations which parade during Mardi Gras.

Saturn and Mercury) to inform them that he would require them to pay for police protection. None of them did. Until 1996, Lee apparently absorbed 100% of the cost of police protection for all Carnival parades rolling in Jefferson Parish. Thus, no money was ever demanded from or paid by any of the fifteen krewes parading each year from 1984 through 1996.

In 1990, ordinances dealing with Mardi Gras were passed and continued to be revised, culminating with the following ordinance adopted in 1995 which stated in relevant part:

Sec. 6–88 Permits

Each float parade and truck parade shall annually be required to obtain the proper permit for the Office of Carnival and Special Events.

Sec. 6–90 Application for permit

(a) Application for float parade permits must be received by the Office of Carnival and Special Events between June 1st and 15th of each year preceding annual parade.

(b) At least sixty (60) days prior to the start of the Carnival/Mardi Gras season, Mardi Gras krewes shall provide written documentation to the Office of Carnival and Special events, specifying that **all financial agreements have been met with bands, dance groups, sheriff's office** and providers of the floats that will be used in each parade, and that indeed the floats will be available for the parade at the stipulated date and time.

(c) In any event, based on the submission of the application and the documentation regarding financial arrangements, a permit will be issued with the proviso that the issued permit is subject to revocation, if any violation of the ordinance comes to light prior to the start of the parade season.

Jefferson Parish Ord. §§ 6–88, 6–90 (emphasis added).

In 1997, Lee decided that any krewe formed after 1996 would have to pay for police protection. Lee has testified that he arrived at this decision and implemented it on his own initiative. Lee has admitted that he did not consider asking Jefferson Parish to bear the cost, and he did not consider any other alternative other than to create the two classes of krewes-"old" and "new". Thus, any krewe formed after 1996, was to be compelled to pay fees for police protection. This criteria is not in the ordinance itself.

Aladdin filed its first application for a parade permit for Carnival 2000. Allegedly, the Office of Carnival/Mardi Gras & Special Events ("OCSE") informed Aladdin that it needed written documentation from Lee confirming that all financial obligations with Lee had been met prior to its issuing a permit. OCSE allegedly stated that it did not know the amount of the fee and that it varied according to guidelines and criteria "known only to Lee."

Aladdin attempted to meet with Lee and received a letter from Deputy Chief Gerald Guidroz, stating that the police protection fee for the 2000 Aladdin parade would be $15,000.00 payable by cashier's check. In addition, the Captain of Aladdin alleges that he met with Guidroz, and he was told that the $15,000 was to be a one-time fee which would not have to be paid for any subsequent years. Aladdin payed the fee, and it was issued parade permits for 2000. The cost apparently for police protection was actually $11,928.00 ($3,072.00 less than the amount paid) which fact Aladdin did not learn until December 5, 2003.[3] Alad-

---

**3.** It is alleged that this information was learned when taking the deposition of Paul Rivera and thus plaintiff did not know that the security costs were actually considered a "deposit" for which it was entitled to a refund until December 5, 2003.

din was issued permits for 2001 and 2002 without any request for further payments. Lee contends this was simply an administrative mistake. Furthermore, no credit was given for the 2000 overpayment.

On February 13, 2003, 9 days prior to the Aladdin's parade date, Lee notified Aladdin by letter that the police protection for the 2003 Aladdin Parade would be $27,600 which Lee contends was a deposit as the actual charges could not be determined until after the parade.

On February 14, 2003, Lee held a press conference stating that he would require $20,000 to be paid by Aladdin. Later that day, Lee stated at another news conference his requirement for payment but gave a different amount. He also stated unequivocally that he decided "who pays."

Of the 15 krewes that paraded only 2 were asked to pay for 2003–Aladdin and Excalibur. Indeed, Lee wrote to OCSE and stated that the cost of police protection for the 2003 Aladdin parade was $24,000 and stated "Please ensure your office does not issue a parade permit to the Krewes of Aladdin and Excalibur until my staff advises you of the prepayment of the estimated security costs." (Uncontested Issue of Fact No. 26). Aladdin allegedly could not find a sponsor or the money, so it appeared that the parade would be canceled as the OCSE would not issue a permit without proof of payment.

On February 18, 2003, Lee stated he would accept any payment that Aladdin could afford and that he would personally make up the difference. A letter to OCS from Lee was sent stating that he had "worked out payment" so that Aladdin could receive its permit. Aladdin was able to raise $3,485 which was paid to Lee. Lee allegedly stated that he would not "bail out" the krewe next year and Aladdin would be billed for whatever the police protection for the 2003 parade cost for 2004. On April 1, 2003, Lee sent an in-voice to Aladdin in the amount of $9,934 for police protection for the 2003 parade which apparently remains unpaid.

In September 2003, Toga contends that Lazaro informed Aladdin that the anticipated cost to parade in 2004 would be $26,00 or $13,161.00 if it "piggy-backed" behind another parade. Aladdin further contends that on September 26, 2003, Lazaro informed plaintiff that 2004 protection fee was $13,161 without any mention of piggy-backing.

In the fall of 2003 the subject ordinances were amended to read:

6–88:

Each float parade and truck parade shall annually be required to obtain the proper permit from the office of carnival and special events.

6–90

(a) Application for float parade permits shall be received by the office of carnival and special events between June 1st and 15th of each year preceding the annual parade. **At the time of the receipt of the application by the office of carnival and special events, the office shall give notice to the applicant of the amount, if any, to be provided by the applicant to the sheriff's office for the provision of security for the parade. This security cost information is to be provided to the office of carnival and special events by the sheriff's office for each** Carnival/Mardi Gras season by June 1st of the year prior to each such season.

(b) At least ninety (90) days prior to the start of the Carnival/Mari Gras season, Mardi Gras Krewes shall provide written documentation to the office of carnival and special events specifying that all financial agree-

ments have been met with the sheriff's office and providers of the floats that will be used in each parade, . . .

(d) Upon the submission of the application and the documentation regarding financial arrangements in accordance with the provisions of this article, the office of carnival and special events shall issue a parade permit to the applicant. . . .

The original complaint in this matter was filed on October 24, 2003. With respect to the amended ordinance, Aladdin contends that there was no schedule, criteria or other factors to consider for the fee to be established. Furthermore, plaintiff contends that there was no legal mechanism established in the ordinance or otherwise for administrative or other appeals from the monetary demand of Sheriff Lee. Ostensibly unless a krewe acquiesced to Lee's demands, a krewe was denied its permit. While the matter was pending and prior to a hearing, an agreement was reached by the parties whereby the defendants issued parade permits to the new krewes for 2004.

A Second Amended Complaint was filed on January 25, 2004, wherein plaintiff contends that Aladdin was damaged by Lee's statements in 2002 and 2003 that Aladdin could not parade if the police protection fees were not paid in full. Aladdin contends these statements caused serious loss of membership, revenue, business reputation and public image. Plaintiff contends that Aladdin lost more than 800 members from 2001 to 2003. Thus, it maintains that it suffered loss of dues, loss of profit on the purchase of throws, loss of funds from fund raisers caused by the loss of membership and the general loss of morale resulting from the controversy.

The subject Motion for Partial Summary Judgment was filed on January 22, 2004, and the Motion to Dismiss was filed on February 3, 2004. Oral argument was held on February 18, 2004. Plaintiff seeks in its motion judgment that:

(1) Section 6–88 and 6–90 of Chapter 6, Article V of the Jefferson Parish Code are unconstitutional as written and as applied;

(2) Aladdin is entitled to a refund of all sums paid by the plaintiff to defendant Lee for 2000 and 2003 parade permits as a result of demands based on the Jefferson Parish Code sections noted above;

(3) Plaintiffs are entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988 for work done thus far and that done for the instant motion;

Jefferson Parish and Lazaro contend in their motion:

(1) Plaintiff's § 1983 claims for actions occurring prior to October 24, 2002 are time barred;

(2) Plaintiff's equal protection claim fails because the ordinance does not create any classifications; and alternatively, there is a rational basis for the way the costs are charged;

(3) Plaintiff's due process claims fail because no allegations are made against Jefferson Parish and the law provides plaintiff with due process through an appeal;

(4) Plaintiff's free speech claims fail because plaintiff is not engaged in an activity protected by the First Amendment;

(5) Detrimental reliance claim fails against Jefferson Parish and Lazaro because it did not make the alleged material misrepresentation;

(6) The Ordinance does not violate plaintiff's constitutional rights as a less stringent standard should be used as Jefferson Parish's regulation is unrelated to the suppression of expression; and

(7) Mandamus is not an available remedy.

Prior to ruling on these motions, the Court was informed that Jefferson Parish intended to amend the ordinances in question which measures were adopted on April 28, 2004. The new amendments have now become effective. The new ordinance eliminates the security costs requirement from the statute. Thus, certain issues are now moot.

## II. CLAIMS THAT ARE MOOTED BY AMENDMENT OF ORDINANCE

A parsing of plaintiff's Complaint, First Amended Complaint and Second Amended Complaint provide the following list of claims made in the instant suit:

1) denial of equal protection as only the "new" crews are assessed the security costs;

2) denial of procedural due process because of the arbitrary nature of the determination of the assessment of the security costs as there was no opportunity prior thereto for notice and hearing;

3) denial of substantive due process because of the arbitrary and capricious nature of the assessment as it was based on actual cost;

4) violation of the right to free speech;

5) individual responsibility on the part of Lee for the violation of the aforementioned constitutional rights;

6) violation of the Louisiana Constitution for violations of due process, equal protection of the laws and freedom of speech;

7) payment of a thing not due;

8) detrimental reliance and request for specific performance as to Lee and Jefferson Parish; and

9) writ of mandamus.

Based on these claims, plaintiff seeks judgment in its Second Amended Complaint in its favor and against the defendants, jointly, severally, and in solido, in amounts both actual and punitive, only as set forth therein against Sheriff Lee, costs, interest and reasonable attorney's fees and, in addition, as follows:

1) declaring that defendants have violated 42 U.S.C. § 1983 by denying plaintiff its right to equal protection of the laws, procedural due process, substantive due process, freedom of speech, and its property and property rights without due process of law;

2) issuing a permanent injunction prohibiting the continuation of the unconstitutional actions with respect to security fees and permits; [4]

3) costs and attorneys fees pursuant to 42 U.S.C. § 1988;

4) awarding plaintiff general damages for loss of business reputation, public image, membership and revenue;

5) ordering the return of the monies paid for the 2000 and 2003 including but not limited to $3,072.00 overpayment for 2000 and the $3,485 in 2003; or

6) alternatively ordering specific performance with respect to the $15,000 being a one time fee; and

7) all just and equitable relief.

Considering that the ordinance has now removed the security cost provisions, the requests for all prospective relief and specific performance are moot. Thus, the issues before the Court are:

1) the § 1983 claims as the ordinances were applied from 1999 to 2003;

2) entitlement to any refund for any moneys paid;

---

4. This request was rendered moot by the agreement reached for the 2004 parades by Jefferson Parish and plaintiff's Second Amended Complaint.

3) entitlement to general damages; and

4) entitlement to attorneys' fees and costs under 42 U.S.C. § 1988.

With this analysis in mind, the Court will now consider the subject motions.

## III. APPLICABLE STANDARDS

### A. Standard for Motion to Dismiss

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliott v. Foufas,* 867 F.2d 877, 880 (5th Cir.1989). Further, "the plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.* 94 F.3d 189, 194 (5th Cir. 1996). This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. *Hitt,* 561 F.2d at 608. In other words, a motion to dismiss an action for failure to state a claim" admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1137 (5th cir.1992). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to

state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick,* 15 F.3d 1338, 1341 (5th Cir.1994).

*Id.* at 161–62.

### B. Standard for Motion for Summary Judgment

Summary judgment is proper only if "there is no genuine issue as to any material fact and... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)

> The party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case... in assessing whether the movant has met this burden, the courts should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion.... All reasonable doubts about the facts should be resolved in favor of the non-moving litigant.... Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts.... If reasonable minds might differ on the inferences arising form undisputed facts, then the court should deny summary judgment.

*Martin v. John W. Stone Oil Distributor, Inc.,* 819 F.2d 547, 548 (5th Cir.1987) (quoting *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir. 1982). The Court will now turn to the Motion to Dismiss.

### IV. JEFFERSON PARISH AND LAZARO'S MOTION TO DISMISS.

### A. Prescription of § 1983 claims prior to October 24, 2002

■ Jefferson Parish and Lazaro contend that plaintiff's § 1983 claims arising

from action prior to October 24, 2002 (one year prior to the filing of this suit) are prescribed. As stated by the United States Court of Appeals for the Fifth Circuit:

Federal courts borrow state statutes of limitations to govern claims brought under section 1983. *See Burge v. Parish of St. Tammany,* 996 F.2d 786, 788 (5th Cir.1993) (citing *Hardin v. Straub,* 490 U.S. 536, 538–39, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); *Jackson v. Johnson,* 950 F.2d 263, 265 (5th Cir.1992)). Although federal courts look to federal law to determine when a civil rights action accrues, *see Jackson v. Johnson,* 950 F.2d at 265, state law supplies the applicable limitations period and tolling provisions. *See Gartrell [v. Gaylor,* 981 F.2d 254,] at 257 ("In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions."). Under federal law, a section 1983 action generally accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action." *Jackson,* 950 F.2d at 265 (internal quotation marks omitted) (quoting *Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir. 1989)).

*Harris v. Hegmann,* 198 F.3d 153, 156–57; *Wallace v. King,* 2003 WL 22852216 (E.D.La. Nov.25, 2003). In Louisiana, the one-year prescriptive period for Louisiana tort actions applies to a § 1983 claim. *Jacobsen v. Osborne,* 133 F.3d 315, 318–19 (5th Cir.1998).

■ Facially, all constitutional claims arising under § 1983 arising prior to October 24, 2002 are prescribed. Thus, plaintiff bears the burden of proving interruption or suspension of prescription. *Curtis v. City of New Orleans,* 2000 WL 557399 at *2 (E.D.La. May 5, 2000) *citing Lima v. Schmidt,* 595 So.2d 624, 628 (La.1992).

■ Plaintiff relies on Louisiana's limited exception to codified prescriptive periods: *Contra non valentum agere nulla currit praescriptio*-that is prescription does not run against a party who is unable to bring an action. *Burge v. Parish of St. Tammany,* 996 F.2d 786 (5th Cir.1993). In that case, the Fifth Circuit noted the four instances where this doctrine applies under Louisiana law:

(1) [W]here there was a legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where some condition coupled with the proceedings prevented the creditor from suing or action; (3) where the debtor has done an act to prevent the creditor for using the cause of action; (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though he is not induced by the defendant.

*Id.* at 788, *citing Minor v. Casten,* 521 So.2d 465, 467 (La.Ct.App.1988). However, as to any constitutional infirmity upon which a § 1983 claim is based herein, *contra non valentum* is unavailable.

■ As noted by Judge McNamara in *Curtis,* "As a judicial exception to the statutory rule of prescription, Louisiana courts strictly construe this doctrine and only extend its benefits up to 'the time that the plaintiff has actual or constructive knowledge of the tortious act.'" *Curtis,* at *2 citing *Eldredge v. Martin Marietta Corp.,* 207 F.3d 737, 743 (5th Cir.2000). "Constructive notice is found at the point at which 'the plaintiff has information sufficient to excite attention and prompt further inquiry.'" *Id.* Under the facts of the case, any alleged unconstitutional application of these ordinances was manifested at the time payment was demanded in 1999. Simply put, Aladdin had knowledge of the alleged wrong then. Thus, any claim for damages based on § 1983 from 1999 through October 24, 2002 have prescribed,

and the motion will be granted in this regard.

### B. Equal Protection Claim

Plaintiff contends that there was a denial of equal protection under the Fourteenth Amendment the purpose of which is to "secure every person within the States jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Plaintiff contends that to prevail on an Equal Protection claim, plaintiff must show:

(1) a defendant created two or more classifications of similarly situated persons that were treated differently and

(2) the classification had no rational relation to any legitimate governmental objective. *Stefanoff v. Hays County, Texas*, 154 F.3d 523, 526 (5th Cir.1998) (prisoner rights case).

Plaintiff argues that the "old" krewes are the favored class since they pay no fees while the "new" krewes are disfavored because they must pay fees ranging from $11,000 to $20,000 a year. The focus of this argument is the fact that Lee has created these different classes.

■ Furthermore, plaintiff contends that because First Amendment rights are at issue, strict scrutiny standard is applicable to the ordinance. Ronald D. Rotunda & John E. Nowak,*Treatise on Constitutional Law–Substance & Procedure*, § 14.7 at 566–67 (3d ed.1999). Strict scrutiny applies when the law in question (either as written or as applied) either (1) is based upon a suspect classification *or* (2) involves fundamental rights. *Id. Gideon v. Wainwright*, 372 U.S. 335, 340, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right

to interstate travel); *Harper v. State Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (right to vote is fundamental right); *Forsyth County Ga. v. The Nationalist Movement*, 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). Thus, plaintiff argues that because this ordinance impinges on its First Amendment rights, strict scrutiny applies-that is it must be "narrowly tailored to achieve a compelling state interest." *Loving v. Virginia*, 388 U.S. 1, 11, 87 S.Ct. 1817; 18 L.Ed.2d 1010 (1967). As such, plaintiff contends that the ordinances are discriminatory as applied because they allow Lee to arbitrarily and unilaterally decide who pays for police protection (overtime) and how much each pays, if anything. Lee has done so without legislative authorization.

■ Jefferson Parish and Lazaro move to dismiss this claim because the ordinances in question do not create any classifications failing the first prong of the test. *Stefanoff*, 154 F.3d at 526. It is only in Lee's application of the ordinance that Lee potentially violates the equal protection clause. Thus, on its face, this claim fails, and Jefferson Parish and Lazaro's motion must be granted in this regard.

### C. Due Process Claims

#### 1. Procedural Due Process.

Aladdin contends that procedural due process may require governmental assurance that individuals are given certain procedural safeguards before being deprived of life, liberty or property. *Frazier v. Garrison I.S.D.*, 980 F.2d 1514, 1528 (5th Cir.1993). Thus, plaintiff maintains that procedural due process concerns are triggered if an ordinance is not implemented in a fair manner *Caballero v. Caplinger*, 914 F.Supp. 1374 (E.D.La.1996) and can arise from an administrative act. *Jackson Court Condominiums v. New Orleans*, 874 F.2d 1070, 1074 (5th Cir.2002). Plaintiff

argues that there was no notice or hearing prior to the decisions about the assessment of costs.

However, as stated in *Jackson Court Condominiums, Inc. v. City of New Orleans,* 874 F.2d 1070 (5th Cir.1989), the dispositive inquiry with respect to a procedural due process claim is whether the ordinance was a legislative or an administrative action. If it was administrative, Aladdin might have been owed some level of procedural due process. "However, it is well established law that once an action is characterized as legislative, procedural due process requirements do not apply." *Id.* at 1074. " 'When the legislature passes a law which affects a general class of persons, those persons have all received procedural due process-the legislative process. The challenges to such laws must be based on their substantive compatibility with constitutional guarantees.' " *County Line Joint Venture v. City of Grand Prairie, Texas,* 839 F.2d 1142, 1144 (5th Cir.1988) *citing* 2 Rotunda, J. Nowak & J. Young, *Treatises on Constitutional Law: Substance and Procedure,* § 17.8, p. 251 (1986).

■ The Court finds that the ordinance in question clearly constitutes legislative action. This ordinance was passed by the Jefferson Parish Council, a legislative body, and the ordinance affects a general ·class of persons, people who parade during Mardi Gras in Jefferson Parish. As such, all of those individuals received procedural due process in that legislative process. Thus, the motion to dismiss the procedural due process claims must likewise be granted.

### 2. Substantive Due Process

■ Plaintiff argues that substantive due process may require courts to void certain types of government action that infringe on individual rights and individual freedom of action. *Frazier v. Garrison*

*I.S.D.,* 980 F.2d 1514, 1528 (5 th Cir.1993). Where governmental power is used to arbitrarily deprive individuals of constitutionally protected rights, then there is a denial of substantive due process: Here, plaintiff contends that the ordinances give unconstitutional discretionary power to Lee. Thus they are "void· for vagueness" *Smith v. Goguen,* 415 U.S. 566, 572–73, 94 S.Ct. 1242, ·39 L.Ed.2d 605 (1974). *National Endowment for the Arts v. Finley,* 524 U.S. 569, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998).

■ However, the Supreme Court has stated unequivocally:

> "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994)...

*County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1714, 140 L.Ed.2d 1043 (1998). As explained *supra,* because of these ordinances' impact on plaintiff's First Amendment rights, the Court finds that a substantive due process analysis is foreclosed.

### D. First Amendment Violation

### 1. Parade Constitutes Protected Speech

Plaintiff contends that the requirement of the payment of a police protection fee as a prerequisite to obtaining a parade permit was an impermissible prior restraint of free speech. This position is further buttressed by the unfettered discretion that was given to Lee under the statutory scheme to determine amount of the security cost fee and who would be required to pay. Plaintiff also alleged that the ordi-

nances were overly-broad and void under the First, Fifth and Fourteenth Amendments.

Relying on *Forsyth County, Georgia v. The Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992), plaintiff argues that while a government may impose a permit requirement on those wishing to hold a parade, the scheme must meet certain constitutional requirements; in particular, the law may not delegate overly broad licensing discretion to a government official. The Supreme Court found that the statute at issue in *Forsyth* was invalid because it lacked adequate procedural safeguards. Plaintiff also cites *Transportation Alternatives, Inc. v. City of New York*, 340 F.3d 72 (2nd Cir.2003) where the court stated, "Regulations granting such broad and unchecked discretion to a government official charged with imposing fees on traditional expressive activities cannot overcome the "heavy presumption" of invalidity to which prior restraints on speech are subject."

Jefferson Parish and Lazaro contend that the parade ordinance in question does not constitute protected speech under the First Amendment. Relying on *City of Dallas v. Stanglin*, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) and *J & B Entertainment, Inc. v. City of Jackson, Mississippi*, 152 F.3d 362 (5th Cir.1998), they maintain that a parade is not a form of expression. In essence, these defendants maintain that simply coming together with bands, beads and cups does not rise to the level of expression that would mandate the protection of the First Amendment.

■ The Court finds such an argument unavailing. A parade implicates the First Amendment.

"A parade is, by its nature, a pristine form of speech." *New York County Board of Ancient Order of Hibernians v. Dinkins*, 814 F.Supp. 358, 366 (S.D.N.Y.1993), *citing Perry Educ. Assoc. v. Perry Local Educators' Assoc.*, 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 152, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Cox v. Louisiana*, 379 U.S. 536, 554–55, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965). The New York district court continued, "Every parade is designed to convey a message.... As such, a parade organized by a private sponsor is the quintessential exercise of the First Amendment right of freedom of expression." *New York County*, 814 F.Supp. at 366.

"Parades are thus a form of expression, not just motion, and the inherent expressiveness of marching to make a point explains our cases involving protest marches." *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 115 S.Ct. 2338, 2345, 132 L.Ed.2d 487 (1995). The Supreme Court continued:

> Not many marches, then are beyond the realm of expressive parades, and the South Boston celebration is not one of them. Spectators line the streets; people march in costumes and uniforms carrying flags and banners with all sorts of messages (*e.g.*, "England get out of Ireland," "Say no to drugs"); marching bands and pipers play; floats are pulled alone; and the whole show is broadcast over Boson television....

*Id.* Thus, the United States Supreme Court overruled the Massachusetts' highest court which had held that the parade did not have any expressive purpose. A Mardi Gras parade has floats with a theme and each float expresses a different aspect of that theme. The expression manifested does not have to be profound to be protected.

### 2. Prior Restraint of Speech

■ This Court concurs in plaintiff's contention that where an ordinance pro-

vides an administrator unbridled discretion to issue a permit, that constitutes a prior restraint of speech. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 108 S.Ct. 2138, 2152, 100 L.Ed.2d 771 (1988); *MacDonald v. Safir*, 206 F.3d 183, 192 (2nd Cir.2000). The Supreme Court stated in *Forsyth County:*

> The Forsyth County ordinance requiring a permit and a fee before authorizing public speaking, parades, or assemblies in "the archetype of a traditional public forum," *Frisby v. Schultz*, 487 U.S. 474, 480, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988), is a prior restraint on speech, see *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–151, 89 S.Ct. 935, 938–939, 22 L.Ed.2d 162 (1969); *Niemotko v. Maryland*, 340 U.S. 268, 271, 71 S.Ct. 325, 327, 95 L.Ed. 267 (1951). Although there is a "heavy presumption" against the validity of a prior restraint, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963), the Court has recognized that government, in order to regulate competing uses of public forums, may impose a permit requirement on those wishing to hold a march, parade, or rally, see *Cox v. New Hampshire*, 312 U.S. 569, 574–576, 61 S.Ct. 762, 765–766, 85 L.Ed. 1049 (1941). Such a scheme, however, must meet certain constitutional requirements. It may not delegate overly broad licensing discretion to a government official. See *Freedman v. Maryland, supra* [380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649] Further, any permit scheme controlling the time, place, and manner of speech must not be based on the content of the message, must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternatives for communication. See *United States v. Grace*, 461 U.S. 171, 177, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983).

*Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130, 112 S.Ct. 2395, 2401, 120 L.Ed.2d 101 (1992).

### 3. Degree of Scrutiny

The next inquiry is the degree of scrutiny required which depends on whether the restriction is a function of the content of the expression or if the restriction is content neutral. *Ward v. Rock Against Racism*, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *People of the State of Illinois v. Jones*, 188 Ill.2d 352, 242 Ill. Dec. 267, 721 N.E.2d 546 (Ill.1999). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791, 109 S.Ct. 2746 citing *Community for Creative Non–Violence*, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). "Government regulation of expressive activity is content neutral so long as it is *justified* without reference to the content of the regulated speech." *Id.* Under the facts of this case, the ordinance undoubtedly constitutes a content neutral statute and as such is subject to an intermediate standard of review.

> Again, as explained in *Ward:*
> [A] regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so. Rather the requirement of narrow tailoring is satisfied "so long as the ... regulation promotes a substantial government interest that would be achieved less effectively absent the regulation."

*Ward*, 491 U.S. at 798–99, 109 S.Ct. at 2757–58; *see International Society for Krishna Consciousness of New Orleans*,

Inc. v. City of Baton Rouge, 876 F.2d 494, 497 (5th Cir.1989); Wexler v. City of New Orleans, 267 F.Supp.2d 559 (E.D.La.2003).

### 4. Narrowly Tailored

As noted, "[t]he doctrine forbidding unbridled discretion requires that the limits the city claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). As the Seventh Circuit stated:

> "It is well established that where a statute or ordinance vests the government with virtually unlimited authority to grant or deny a permit, that law violates the First Amendment's guarantee of free speech." See Saia v. People of State of New York, 334 U.S. 558, 559–60, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (city ordinance prohibiting use of sound amplification devices, except with permission obtained from chief of police is invalid as infringing right of free speech, in absence of any standards prescribed for exercise by chief of police of his discretion); City of Lakewood v. Plain Dealer Publ. Co., 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (licensing scheme which gives the government unlimited discretion is facially unconstitutional). As we have reiterated, where virtually unlimited discretion exists, "the possibility is too great that it will be exercised in order to suppress disfavored speech." MacDonald v. Chicago Park Dist., 132 F.3d 355, 361 n. 6 (7th Cir.1997) (citing Lakewood, 486 U.S. at 757–58, 108 S.Ct. 2138, 100 L.Ed.2d 771).

MacDonald v. City of Chicago, 243 F.3d 1021, 1026 (7th Cir.2001).

 In the case before the Court, Lee is given no bounds or criteria to use to determine the amount to demand. Indeed, his application of this ordinance demonstrates precisely how "unbridled" his discretion is in that he implemented this statute by creating two classes of krewes which were not contemplated in the statute-old krewes which were exempt from its requirement for payment and new krewes that would be asked to pay security costs. Now apparently, he has further interpreted the statute to require a "deposit" for those costs, and has never refunded the money owed to Aladdin with respect to the 2000 parade payment.

Based on this analysis, the Court must deny Jefferson Parish's motion to dismiss and will grant Aladdin's Motion for Summary Judgment in this regard.

### D. Detrimental Reliance Claim

Jefferson Parish and Lazaro seek the dismissal of the detrimental reliance claim. That claim arises from representations allegedly made by Deputy Chief Guidroz, Lee's employee, that the $15,000 payment for the 2000 parade permit was a "one-time fee".

 To state a claim for detrimental reliance in Louisiana, three elements must be alleged: (1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance. Miller v. Miller, 817 So.2d 1166, 1171 (2002) citing Morris v. Friedman, 663 So.2d 19. In this instance, there is no allegation that either Jefferson Parish or Lazaro made the alleged representations upon which Aladdin relied and there is no allegation that they could or would have been empowered to instruct Deputy Chief Guidroz to do so. As such, this claim fails as against these two defendants and the motion to dismiss will be granted in this regard.

Having dispensed with the Motion to Dismiss, the Court will now turn to plain-

tiff's Motion for Partial Summary Judgment.

## V. MOTION FOR PARTIAL SUMMARY JUDGMENT

Because of the foregoing findings, the Motion for Partial Summary Judgment is moot as to all three parties with respect to the § 1983 claims arising prior to October 24, 2002, since they are prescribed. Likewise, Aladdin's Motion for Partial Summary Judgment as to Lazaro and Jefferson Parish, with respect to the denial of equal protection of the law and the denial of due process are moot as those claims are dismissed as to those two parties. As to the motion for partial summary judgment on the violation of the right of free speech, the motion is granted for the reasons set forth above as to Lazaro, in his official capacity and Jefferson Parish. The Court now turns to the remaining claims, beginning with the equal protection, due process and First Amendment claims with respect to Sheriff Lee in his official capacity.

Sheriff Lee, either in his official capacity, or in his individual capacity, did not file a Motion to Dismiss with respect to any of the claims. Furthermore, his opposition to plaintiff's motion does not address the issues presented therein in a cogent, discrete fashion.

The following is a synopsis of the relevant portions of Sheriff Lee's opposition to plaintiff's motion:

(1) Lee only demands reimbursement for the cost of overtime compensation required under the Fair Labor Standards Act; he paid for a part of the costs out of the Sheriff's budget out of his sense of largesse;

(2) The fact that these costs vary does not make his actions "arbitrary or capricious;"

(3) The "actual cost recovery standard" is content neutral with respect to any expressive activity of the Mardi Gras parade organization;

(4) To the extent that the costs "exceed his subsidy to the Parish" he is entitled to reimbursement;

(5) Aladdin has no federal right to free overtime services from Sheriff Lee's deputies;

(6) Sheriff Lee does not issue Mardi Gras krewe permits;

(7) The Parish has chosen to Shift to the krewes the cost of Mardi Gras law enforcement services in excess of Sheriff Lee's subsidy to the Parish;

(8) Sheriff Lee has implemented a rational and reasonable seniority system method for recovering the cost of providing Mardi Gras law enforcement services in excess of his subsidy to the Parish;

(9) The principles of *Forsythe County* are inapplicable because the parade permit fee at issue in *Forsythe County* "did not include any calculation for expenses incurred by law enforcement;"

(10) Mardi Gras is a government sponsored entertainment medium over which Jefferson Parish retains content control; therefore, Aladdin does not have a First Amendment right to participate; and

(11) Sheriff Lee did not make any agreement with Aladdin to charge a one-time fee.

In making these sweeping arguments, the Sheriff did not grace the Court with any legal analysis based on any case law or statute. Thus, the Court is left in the awkward position of trying to formulate the Sheriff's actual legal arguments in opposition to plaintiff's cogent and extremely well-briefed motion.

## A. Equal Protection Claim

In order to prevail on a claim against Lee in his official capacity based on a violation of the equal protection clause, it must be proved that:

(1) a defendant created two or more classifications of similarly situated persons that were treated differently and

(2) the classification had no rational relation to any legitimate governmental objective.

*Stefanoff v. Hays County, Texas,* 154 F.3d 523, 526 (5th Cir.1998) (prisoner rights case). It is uncontroverted that Lee created two classifications-old krewes and new krewes in applying the security cost ordinance in 2003. However, Lee contends that his actions were based on a rational and reasonable seniority system method, apparently relying on *City of New Orleans v. Nancy Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), albeit the case citation does not appear in Lee's brief.

In *Dukes,* the Supreme Court had to determined whether a municipal ordinance that prohibited vendors from selling foodstuffs from pushcarts in the French Quarter (except for those who had continuously operated the same business for eight or more years prior to the ordinance's enactment) violated the equal protection clause. The Supreme Court held that the "ordinance including the "grandfather provision" was solely an economic regulation aimed at enhancing the role of the French Quarter's tourist-oriented charm in the economy of New Orleans." *Id.* at 302, 96 S.Ct. at 2516. The Court continued:

> When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations ... Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.... In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in area that neither affect fundamental rights nor proceed along suspect lines.

*Id.* (citations omitted). Thus, the Supreme Court found the ordinance did not violate the equal protection clause.

▮ Herein lies the problem with the applicability of *Dukes* to the situation at hand. Lee is not a legislative body making an economic decision; rather, he is an individual, duly elected albeit, who is engaging in the creation of classes of citizens. Furthermore, as noted above, the Court has found that a fundamental right is involved here-that of free speech-and as such *Dukes* is equally unavailing. Based on the foregoing, the Court finds that plaintiff's motion for summary judgment with respect to a violation of the equal protection clause must be granted as to Lee's actions in his official capacity after October 24, 2002, as there is no evidence that the classification have any rational relation to a legitimate government objective. Every Carnival parade results in additional expenses for Jefferson Parish and the Sheriff's office, and it is arbitrary to only require the "new" krewes to pay and give the old krewes a free ride.

## B. Due Process

### 1. Procedural Due Process

Again, procedural due process may require governmental assurance that individuals are given certain procedural safeguards before being deprived of life, liberty or property. *Frazier v. Garrison*

*I.S.D.,* 980 F.2d 1514, 1528 (5th Cir. 1993). As such, plaintiff argues that procedural due process concerns are triggered if an ordinance is not implemented in a fair manner.

As stated in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):

> " 'Due process' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961)"(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental an private interests that are affected.... More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and fiscal and administrative burdens that the additional or substitute procedural requirement would entail....

*Id.* at 334, 96 S.Ct. at 893 (citations omitted).

In the instant case, there is no administrative process to review. Lee acted unilaterally. As such, the Court is not persuaded that the violations at issue are susceptible to a procedural due process review. Furthermore, because of the Court's finding that Lee violated the equal protection clause, the Court will not rely on this theory to find Lee liable in his official capacity.

### 2. Substantive Due Process

For the reasons noted above in the context of Jefferson Parish and Lazaro, as the Court finds that Aladdin's First Amendment rights are implicated, the Court will forgo and application of this theory as required by *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1714, 140 L.Ed.2d 1043 (1998).

### C. First Amendment Violation

The Court finds that the analysis with respect to plaintiff's claims against Lazaro and the Parish of Jefferson as regards a violation under § 1983 of Aladdin's First Amendment rights is equally applicable to Lee in his official capacity. Thus, the Motion for Partial Summary Judgment will be granted in this regard as to Lee in his official capacity for the reasons noted above.

### D. Individual Responsibility of Sheriff Harry Lee

Aladdin seeks summary judgment against Harry Lee personally on the § 1983 claims. To do so, Aladdin must prove that Lee, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). However, officials sued in their personal capacities, unlike those sued in official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law or qualified immunity. *Id.* Considering the paucity of briefing in this respect, the Court will deny this portion of motion. Lee is ordered to file a motion as to the issue of qualified immunity on or before July 20, 2003.

### E. Payment of a Thing Not Due

Citing La. Civ.Code art. 2298–2300, plaintiff contends that since the ordinances were unconstitutional, Lee is required to return all payments. The relevant articles read:

Art. 2298 Enrichment without cause; compensation

A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.

The extent of the enrichment or impoverishment is measured as of the time the suit is brought or according to the circumstances, as of the time the judgment is rendered.

Art. 2299 Obligation to restore

A person who has received a payment or a thing not owed to him is bound to restore it to the person from whom he received it.

Art. 2300 Obligation that does not exist

A thing not owed when it is paid or delivered for the discharge of an obligation that does not exist.

Art. 2303 Liability for the person receiving payment

A person who in bad faith received a payment or a thing not owed to him is bound to restore it with its fruits and products.

Plaintiff relies on these articles alone and does not cite a single case dealing with their application in the context of a security cost charge that is determined to be unconstitutional. During oral argument, plaintiff conceded there were questions of fact precluding judgment at this time. Thus, the Court will deny the motion in this respect.

### F. Detrimental Reliance

There are significant factual disputes as to whether Guidroz stated that the $15,000 was to be a one time payment. Furthermore, to the extent that now there is no requirement for payment in the statute, the claim might be moot. Accordingly, summary judgment is inappropriate as to this claim. Thus, the Motion for Partial Summary Judgment in this regard will be denied as well.

### G. Overpayment of $3,072.00 for 2000

Lee admitted at oral argument that as Lee only sought reimbursement for FLSA overtime payments, Aladdin was due $3,072.00 from its 2000 payment; however, it was made clear that this would not be based on any legal theory save overpayment. As such, the motion for partial summary judgment is granted on the basis of overpayment.

### H. Damages and Attorneys' Fees

As concerns damages and an award of attorneys' fees based on being a prevailing party, the Court will defer on these issues. While it seems clear that plaintiff's are entitled to refunds with respect to the $3,072.00 overpayment in 2000, precisely what damages are due by virtue of the defendants' violation of § 1983 is not clear and has not been briefed with any detail. Furthermore, because of the outstanding claims based on disputes concerning material facts as to the detrimental reliance claim and Lee's personal liability, entering judgment in that regard would be premature.

Furthermore, as to attorneys' fees, 42 U.S.C. § 1988 provides in relevant part that "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983], ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs..." *See* 42 U.S.C. § 1988. "Plaintiffs may be considered prevailing parties for attorneys' fee purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, this concept was further refined in *Buckhannon Board and Care Home, Inc. v. West Va. Dept. of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), where the Supreme Court found that in order to apply statutory fee-shifting provisions, either a judgment on the merits or a court-ordered consent decree was necessary to qualify as a "prevailing party". Nonetheless, "a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Lipscomb v. Columbus Municipal Separate School District*, 261 F.Supp.2d 626 (N.D.Miss.2003) *citing Hensley*, 461 U.S. at 429, 103 S.Ct. 1933. Considering the pendency of the claim for damages and the relationship between the award of damages and fees, the Court will defer ruling in this regard at this time. Accordingly,

**IT IS ORDERED** that all claims for prospective relief and mandamus are **MOOT.**

**IT IS FURTHER ORDERED** that Motion to Dismiss filed by William Lazaro, Jr., Jefferson Parish Carnival/Mardi Gras & Special Events Office Director, in his official capacity and the Parish of Jefferson is **GRANTED** with respect to any claims under 42 U.S.C. § 1983 arising pri-

or to October 24, 2002, the equal protection claim, the due process claims, the detrimental reliance claim and **DENIED** with respect to the First Amendment claim.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment filed by Toga Society, Inc. d/b/a the Krewe of Aladdin is **GRANTED** with respect to the First Amendment claim as against Lazaro, Jefferson Parish and Lee; **GRANTED** with respect to the Equal Protection claim as to Lee and **DENIED** with respect to Lazaro and Jefferson Parish; **DENIED** with respect to Due Process as to Lazaro, Jefferson Parish and Lee; **DENIED** with respect to the personal liability of Lee; **DENIED** with respect to the claim for payment of a thing not due as to all three defendants; **DENIED** with respect to the detrimental reliance as to Lee; and **GRANTED** with respect to a refund of $3,072.00 for 2000 and **DENIED** with respect to other damages and attorneys' fees.

**IT IS FURTHER ORDERED** that Lee, in his individual capacity, shall file a Motion to Dismiss based on qualified immunity on or before July 20, 2004 to be noticed for hearing on August 4, 2004 at 9:30 a.m.