# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 29, 2011

No. 10-30025

Lyle W. Cayce
Clerk

Holly Sarre, Barbara Yochum, and Jack Wittenbrink

Plaintiffs-Appellants

v.

City of New Orleans

Defendant-Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:05-CV-910

Before DAVIS, WIENER, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Holly Sarré, Barbara Yochum, and Jack Wittenbrink ("Appellants") sued the City of New Orleans ("the City"), attacking a municipal ordinance that prohibits the sale of prints around the fence bordering Jackson Square.  Appellants contend that the ordinance violates their First Amendment rights to free speech.  The district court granted summary judgment in favor of the City, holding that the ordinance is constitutional because (1) it is narrowly tailored to serve a significant governmental interest, and (2) alternative fora for

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-30025

the complaining artists' expression exist.  Concluding that genuine issues of material fact remain in dispute, we reverse the grant of summary judgment and remand to the district court for further proceedings.

## I.  FACTS AND PROCEEDINGS

*A.  Facts*

Appellants are among a group of artists compromising the City-regulated Jackson Square Artist Colony who offer their work for sale along the fence surrounding Jackson Square in the City's French Quarter.  NEW ORLEANS, LA., CODE §§ 110-121-32 (1995), hereafter "the Ordinance," limits the sale of artwork in the Jackson Square area to original art, *i.e.* works that the artist has created by hand.  The Ordinance expressly prohibits the sale of art made by "mechanical or duplicative process in whole or in part."[1]  Thus, by virtue of the restrictions of the Ordinance, artists at Jackson Square are not allowed to sell prints, irrespective of whether those prints are reproductions of their own original artwork or are produced by the artist who created the original.

Appellants are artists who sell their original artwork as well as prints of their work in the Jackson Square vicinity. Sarré began selling her art there, both originals and prints, in 2005.  Yochum, with the exception of a few years when she was not living in Louisiana, has sold her original artwork in the area since 1966, and she began selling prints of her work there in 1997.  Wittenbrink moved to New Orleans in 2004 and began selling his original artwork and prints in the area.  Appellants allege that, until shortly before they sued the City, the Ordinance remained largely unenforced.

---

[1] NEW ORLEANS, LA. § 110-121(c).

*B. Proceedings*

In 2005, Sarré sued the City in district court, seeking declaratory and injunctive relief. She claimed that the Ordinance violated her First Amendment right to free speech and her Fourteenth Amendment rights under the Due Process, Equal Protection, and Privileges and Immunities Clauses. A year later, the district court administratively closed Sarré's case and directed the City to consider a more narrowly tailored ordinance that would allow artists to sell some prints of their original artwork at Jackson Square. The City Council declined to pass a less restrictive ordinance.

In response, the district court re-opened Sarré's case. She then filed a motion for partial summary judgment seeking injunctive and declaratory relief. A competing group of artists, the Jackson Square Artists' Association ("JSAA"),[2] filed an amicus brief in opposition to Sarré's motion. The district court denied her motion, after which both Sarré and the City filed opposing motions for summary judgement.

In the meantime, Yochum and Wittenbrink had sued the City. Their suits were administratively consolidated with Sarré's case. Following consolidation, the district court held a hearing on the cross-motions for summary judgment. That hearing comprised oral arguments, but no testimony or evidence was submitted. The district court granted summary judgment in favor of the City. In response, Appellants filed a "Motion for New Trial or Reconsideration and/or to Alter or Amend or to Grant Relief from Judgment," which the district court denied. Appellants timely filed a notice of appeal.

---

[2] An association consisting of many, but not all, of the artists licensed to sell their wares in the Jackson Square Artist Colony.

No. 10-30025

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo.[3] Summary judgment is appropriate when there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law.[4]

## III.  ANALYSIS

### A.  Jurisdiction

The City contends that we lack jurisdiction to entertain this appeal. The City bases its assertion on 28 U.S.C. § 1292, which limits our ability to hear appeals from interlocutory orders of district courts. Although § 1292 generally limits our jurisdiction in such a fashion, it is not a concern here because we are reviewing the district court's grant of summary judgment, and not an interlocutory order. As this appeal is based on a final judgment of the district court, we have jurisdiction to hear it.

### B.  Content-Neutral Analysis

The First Amendment's protection of speech covers prints of artwork.[5] The Ordinance is content-neutral and applies to the Jackson Square area, as well as the immediately surrounding streets and sidewalks. Parks, sidewalks, and streets owned by the government are deemed public fora when such locales have

---

[3] *Serv. Emps. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 595 (5th Cir. 2010).

[4] FED. R. CIV. P. 56(a).

[5] *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 602 (1998) ("It goes without saying that artistic expression lies within this First Amendment protection."); *Kaplan v. California*, 413 U.S. 115, 119-20 (1973) ("[P]ictures, films, paintings, drawings, and engravings . . . have First Amendment protection . . . .").

been used historically as places of assembly and communication.[6]  The government may impose content-neutral regulations (commonly referred to as "time, place and manner" restrictions) in traditional public fora if it can show that the regulation (1) serves a significant governmental interest, (2) is narrowly tailored to achieve that interest, and (3) leaves open ample alternative channels of communication.[7]  In such a case, the government has the burden of establishing that the regulation is reasonable.[8]  Although selling prints of original artwork is a commercial activity, a number of courts have ruled that art, even when put on sale, is a protected expressive activity, so that the content-neutral analysis applies.[9]  To evaluate the instant Ordinance, then, we employ a content-neutral analysis.

## C.  Significant Governmental Interest

None contests that the City has a significant interest in protecting the character of Jackson Square.  Referring to the French Quarter by its common title, the Vieux Carre, the Supreme Court, in *City of New Orleans v Dukes*, held that the City has a interest in protecting that area's distinct character, within

---

[6] *United States v. Grace*, 461 U.S. 171, 177 (1983); *Hague v. Comm. for Indus. Org.*, 307 U.S. 497, 515-16 (1939).

[7] *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citing *Clark v. Cmty. for Creative Non-Violence*, 486 U.S. 288, 293 (1984)); *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 535-36 (1980).

[8] *Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 118 (5th Cir. 1992) (citing *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481 (1989)).

[9] *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801 (1988) ("It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak."); *Bery v. City of New York*, 97 F.3d 689, 696 (2d Cir. 1996) (noting that without the ability to make money through the sale of art, artists' ability to create art in the first place would be curtailed and so the proper analysis to apply for a case involving the licensing of commercial street art is a content-neutral one).

No. 10-30025

which Jackson Square is prominently located.[10] The Louisiana Supreme Court, in *City of New Orleans v. Levy*, recognized the City's interest in preserving the character of the French Quarter, noting that, "[t]he preservation of the Vieux Carre as it was originally is a benefit to the inhabitants of New Orleans generally, not only for the sentimental value of this show place but for its commercial value as well, because it attracts tourists and conventions to the city, and is in fact a justification for the slogan, America's most interesting city."[11] Although the analysis in neither case required this interest to be significant, both courts made clear that the City's interest in preserving the character of this historical neighborhood rises to the required level. The character of Jackson Square and the French Quarter helps to set New Orleans apart from other American cities and draws tourists, artists, buyers of art, and others to visit or make their homes in that unique section of this unique city. Preservation of this resource is rightfully of paramount importance to the City.

It is not sufficient, however, for the City to show that it has a significant interest in preserving the character of Jackson Square.[12] As noted, the City has the burden of proving that prohibiting the sale of prints in Jackson Square is necessary to prevent harm to the *tout ensemble* of the square and is, therefore, necessary to maintaining the government's interest. In support of its contention that the sale of prints will harm the character of Jackson Square, the City proffered affidavits from several artists, some newspaper articles, Appellants'

---

[10] 427 U.S. 297, 304-05 (1976), *abrogated on other grounds by Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985); *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty., W. Va.*, 488 U.S. 336 (1989).

[11] 64 So. 2d 798, 801-02 (La. 1953).

[12] *See Basiardanes v. City of Galveston*, 682 F.2d 1203, 1215 (5th Cir. 1982) ("The assertion of a state interest, however, is not enough. The city must buttress its assertion with evidence that the state interest has a basis in fact . . . ." (internal citation omitted)), *abrogated on other grounds by City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986).

websites, and copies of the Ordinance. We nevertheless conclude that the evidence thus provided is insufficient to prove that the Ordinance is required to ensure the City's significant interest in protecting the character of Jackson Square.

In *Edenfeld v. Fane*, the Supreme Court noted that the government's burden in cases like this "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."[13] There, the Supreme Court struck down a ban on solicitation by accountants, in part because the government produced no studies suggesting that such solicitation creates the dangers of fraud, overreaching, or compromised intelligence.[14] The Court later said that "we do not read our case law to require that empirical data come to us accompanied by a surfeit of background information[,]"[15] but the government must produce *some* empirical data to support content-neutral regulations of speech in traditional public fora. Evidence of the effect that artists' sales of prints of their original work have on the *tout ensemble* of Jackson Square would be most useful in any judicial effort to determine whether a ban on the sale of prints of the Jackson Square artists' artworks is necessary to preserve the character of the area. "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever

---

[13] *Edenfeld v. Fane*, 507 U.S. 761, 770-71 (1993).

[14] *Id.* at 771.

[15] *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 628 (1995).

No. 10-30025

evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."[16]

The City has not adduced any such evidence. Instead, it has merely offered affidavits of rival artists, who are likely to be biased against their competitors. The rival artists referred to the negative effect of the sale of prints on the artist colonies of Michigan, Paris, and Montreal, but no studies were provided to corroborate these impressions. The City also referenced a 1968 study analyzing the *tout ensemble* of the Vieux Carre, which argued for the importance of a healthy artistic community to the character of the French Quarter. The City also submitted news articles about the problems raised by the sale of postcards in the early 1950's, but those articles are irrelevant, given that prints of original artwork and post cards are obviously very different. Finally, the City provided materials on general economic theory to argue that if the Ordinance were changed, an increase in the supply of lower-cost art, in combination with a relatively static demand, would produce a drop in prices which in turn would harm the local artists. The City argued that "[n]o studies particular to Jackson Square exist because they would simply reiterate basic assumptions of economic theory."

As these materials fail to prove a nexus between the sale of prints at Jackson Square and harm to the character of that area, the City has failed to meet its summary judgment burden in respect to this element. Indeed, it could well be that an increased inventory of quality art in the form of artist-produced prints would expand the consumer base of the Jackson Square artists by encouraging less affluent individuals to consider purchasing artwork there. Morever, Appellants have proffered evidence that for at least five years, a significant number of prints have been sold in Jackson Square with minimal

---

[16] *Renton*, 475 U.S. at 51-52.

No. 10-30025

effect on its artist colony. As summary judgment is appropriate only when there is no genuine issue of material fact in dispute, we reverse and remand to the district court for further consideration of this issue.

*D.  Alternative Fora*

The City must also show that its content-neutral Ordinance leaves open ample alternative fora for Appellants' expression of free speech.[17] An alternative forum does not have to be the speaker's first choice.[18]   Nevertheless, an alternative forum is not sufficient if it "foreclose[s] a speaker's ability to reach one audience even if it allows the speaker to reach other groups."[19] The fact that an artist can sell his product in other locations to other audiences does not mean those locations are adequate alternatives.[20]

As alternative venues, the City has proposed the French Market in the Quarter, including both the Dutch Market Co-Op and the Flea Market, as well as local galleries and the internet. The district court accepted these venues as appropriate alternatives that are reasonably available to Appellants for the sale of their prints.

We conclude, however, that this is not indisputably the case. The Dutch Market Co-Op in the French Market is restricted to members who are "juried in" after a subjective selection process, whereas the Jackson Square market is open to any artist who pays the required yearly fee. When Appellants applied to sell

---

[17] *See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 654-55 (1981).

[18] *Id.* at 647.

[19]  *Gresham v. Peterson*, 225 F.3d 899, 907 (7th Cir. 2000); *City of Ladue v. Gilleo*, 512 U.S. 43, 56-57 (1994) (noting that alternatives to posting signs on residential property such as posting signs on commercial property are inadequate because residents may wish to reach neighbors); *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 812 (1984); *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990).

[20] *See, e.g.,Wexler v. City of New Orleans*, 267 F. Supp. 2d 559, 568 (E.D. La. 2003).

No. 10-30025

prints in the French Market Flea Market, they were told that no new print vendors were allowed at the time, regardless whether the prints were of the artist's original artwork. Additionally, the fees at the Flea Market are significantly higher than those charged by the City to sell art at Jackson Square ($7 to $23 per day to sell at the Flea Market as opposed to $175 per year to sell at Jackson Square). Neither do galleries and Internet websites appear to be appropriate alternative venues because they reach very different audiences of prospective art purchasers than those at Jackson Square.[21] Tourists are likely to wander by historic Jackson Square and perhaps find a piece of art that strikes their fancy, whereas only dedicated art-seeking visitors intent on purchasing art are likely to explore the galleries of the French Quarter. Likewise, websites are ineffective at reaching the myriad tourists who wander by Jackson Square because such sites attract an entirely different clientele comprising Internet-savvy art consumers.

In summary, the City has failed to demonstrate that ample alterative venues exist. On remand, therefore, the district court must determine whether there exist alternative fora at which Appellants can reasonably expect to sell prints of their original artwork to the tourists who visit New Orleans.

## IV. CONCLUSION

When the government seeks to regulate speech in traditional public fora through content-neutral regulation, it has the burden of demonstrating that its regulation (1) serves to achieve a significant governmental interest, (2) is

---

[21] *See Bery*, 97 F.3d at 698 ("Displaying art on the street has a different expressive purpose than gallery or museum shows; it reaches people who might not choose to go into a gallery or museum or who might feel excluded or alienated from these forums. The public display and sale of artwork is a form of communication between the artist and the public not possible in the enclosed, separated spaces of galleries and museums.").

narrowly tailored to achieve that interest, and (3) leaves open ample alternative channels of communication.  The City has failed to bear its burden of showing that the Ordinance is narrowly tailored to serve a significant governmental interest and that it leaves open ample alternative channels of expression. Summary judgment was inappropriate in light of the many unanswered and disputed questions of fact.  We therefore reverse the grant of summary judgment and remand to the district court for further production of evidence as to the relationship between the Ordinance and the government's interest in protecting the character of Jackson Square and the availability of alternative fora. REVERSED and REMANDED with instructions.